Joseph RODONICH, Alex Chotowicky, Wasyl Lawro, and Harry Diduck, Plaintiffs-Appellants, Cross-Appellees,

v.

HOUSE WRECKERS UNION LOCAL 95 OF LABORERS' INTERNATIONAL UNION, Laborers' International Union of North America, John Senyshyn, individually and as President, and John Roschetski, individually and as Secretary-Treasurer of House Wreckers Union Local 95 of Laborers' International Union of North America, Stephean McNair, Joseph Sherman, Andrew Klebetz, Albert Bender, William Nahay, Phil Chillak, Joseph Pastroski, Samuel Adams, Harold Spellman, Peter Jones, John Slan, Earl Dupree, and John Chillak, Defendants-Appellees, Cross-Appellants.

Nos. 440, 476 and 477, Dockets 86–7314, 86–7540, and 86–7542.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1986.

Decided April 28, 1987.

See also, D.C., 627 F.Supp. 176.

Wendy E. Sloan, New York City (Burton H. Hall, Hall & Sloan, New York City, of counsel), for plaintiffs-appellants, cross-appellees.

Orrin Baird, Washington, D.C. (Robert J. Connerton, Theodore Green, Connerton, Bernstein & Katz, Washington, D.C., of counsel), for defendant-appellee, cross-appellant Laborers' Intern. Union.

Richard Dorn, Sipser, Weinstock, Harper & Dorn, on the brief, for defendants-appellees, cross-appellants, Local 95 and individual defendants.

Before MANSFIELD,[*] MESKILL and MINER, Circuit Judges.

MESKILL, Circuit Judge:

Four plaintiffs in this action, Joseph Rodonich, Alex Chotowicky, Wasyl Lawro and Harry Diduck, all members of defendant House Wreckers Union Local 95 (Local 95), appeal from a judgment of the United States District Court for the Southern District of New York, Cannella, J., entering a verdict after a jury trial against Local 95 and dismissing plaintiffs' claims against Laborers' International Union of North America (LIUNA). LIUNA, Local 95 and

---

[*] Judge Mansfield died on January 7, 1987. Judges Meskill and Miner have decided this appeal in accordance with § 0.14(b) of the Rules of this Court.

the individual defendants cross-appeal from the judgment.

In their complaint, plaintiffs alleged that defendants engaged in a scheme to suppress dissent within Local 95 and unlawfully disciplined them in violation of sections 101(a)(1), (2), (5), 609 and 610 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(1), (2), (5), 529, 530 (1982) (LMRDA), section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982) (LMRA), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (1982) (RICO), and LIUNA's constitution.

Before trial, the district court dismissed the state law contract claim as preempted by federal labor law and granted LIUNA summary judgment on plaintiffs' claim that LIUNA breached its constitution in violation of section 301(a) of the LMRA. *See Rodonich v. House Wreckers Union Local 95 of Laborers' International Union of North America,* 624 F.Supp. 678 (S.D.N.Y. 1985). The court refused, however, to grant summary judgment on the remaining counts. After a jury trial, a verdict was returned in favor of plaintiffs Rodonich, Chotowicky and Lawro against Local 95. The district court entered final judgment dismissing plaintiffs' remaining claims against LIUNA and dismissing all claims of plaintiff Diduck. Judgment was entered in favor of plaintiffs Rodonich, Chotowicky and Lawro against Local 95 in accordance with the verdict.

We affirm the dismissal of all claims against LIUNA except those asserted by Diduck. As to Diduck's claims, we reverse the district court's dismissal of the complaint, hold LIUNA liable to Diduck and remand the case for further proceedings on the issue of damages. Plaintiffs do not appeal the dismissal of their RICO claims against LIUNA.

## BACKGROUND

This case arises out of a political struggle between two warring union factions for control of Local 95. Plaintiffs Rodonich, Chotowicky and Lawro comprised the "Rodonich faction," which in 1981 held three of the seven seats on Local 95's Executive Board. Rodonich occupied the position of Secretary-Treasurer, Chotowicky was Vice President and Lawro was Recording Secretary. Plaintiff Diduck did not hold office in Local 95, but actively supported the Rodonich faction. The Rodonich faction shared power on the Executive Board with members of their rival faction, known as the "Senyshyn faction," including several of the named individual defendants to this suit, most notably John Senyshyn, who was President of Local 95 in April 1980.

In April 1981, Local 95's Business Manager and Chief Executive Officer, Michael Novack, resigned from office. The bitter schism that precipitated Novack's resignation left Local 95's Executive Board evenly balanced between the two factions. As a consequence of this resignation, political disruption within the union intensified. Acts of violence were reported. Rodonich claimed that he was assaulted by defendant Samuel Adams and several other men. In a letter dated May 25, 1981, and addressed to Senyshyn with copies to LIUNA officials, Harry Diduck reported that he was threatened by Adams. Diduck's letter also accused Senyshyn of being responsible for a certain contractor's paying below union scale wages and of delaying charges against Novack stemming from an earlier stabbing of a Local 95 member.

Shortly thereafter, Adams filed charges of slander against Diduck based on Diduck's letter to LIUNA. Adams also filed charges against Rodonich for calling him a "nigger." Other charges against Rodonich alleged that he had failed to pay the salary of the Business Manager, the validity of whose recent election to the Executive Board Rodonich disputed. Rodonich and Chotowicky were both charged with "dishonesty" and "fraud" because Chotowicky, who believed that he was rightfully the acting President while Senyshyn temporarily occupied the position of Business Manager, had performed the President's job of co-signing (with the Secretary-Treasurer, Rodonich) union checks. Lawro was charged with "negligence," "incom-

petence" and "dishonesty" for failing to take the minutes of a union meeting.

Local 95's charges against plaintiffs were brought before a panel of union members selected by Senyshyn. After trials held on August 24, 1981, plaintiffs were found guilty. As a result, Rodonich, Chotowicky and Lawro were removed from Local 95's Executive Board. Diduck was fined $500 and warned that his membership in Local 95 would be revoked if he committed further offenses. Diduck's fine was stayed pending appeal and has never been collected.

Pursuant to Article 12 of the Uniform Local Union Constitution, plaintiffs appealed to LIUNA. Plaintiffs wrote numerous letters to LIUNA officials detailing the history of the factional dispute that led to their being disciplined and alleging that they had "been disciplined for the exercise of [their] rights, as union members." *See* Letter from J. Rodonich to A.E. Coia, General Secretary-Treasurer, LIUNA (Oct. 12, 1981), J.App. at 241. On January 13, 1982, LIUNA's Eastern Hearings Panel heard plaintiffs' appeals—first Diduck's appeal and then those of Rodonich, Chotowicky and Lawro. All four plaintiffs were represented by counsel at these hearings. Diduck's counsel stressed that Diduck had been fined for statements he made in a letter to LIUNA and argued that such a fine violated the union constitution as well as Diduck's right of free speech. Counsel for Rodonich, Chotowicky and Lawro stressed that the charges arose out of a factional dispute and involved a pattern of violence.

The decision of LIUNA's Hearings Panel reported that "the charges are amply supported by the evidence." This decision was approved and adopted by LIUNA's General Executive Board on February 23, 1982. Plaintiffs filed their complaint in the Southern District of New York on August 23, 1983.

The trial in the district court was conducted in three separate phases and the jury returned three separate verdicts: (1) determining liability on LMRDA and LMRA claims, (2) determining liability on RICO claims, and (3) determining damages. After the first phase, the jury found liability on the part of Local 95, John Senyshyn, Joseph Sherman and Albert Bender on the LMRDA and LMRA claims in favor of Rodonich, Chotowicky and Lawro. It found no liability on the part of LIUNA to anyone.

After the second phase, the jury found that two of the individual defendants, Joseph Sherman and Stephean McNair, had participated in Local 95's affairs through a pattern of racketeering activity in violation of RICO.

After a third phase, the jury awarded Rodonich, Chotowicky and Lawro compensatory damages in the amount of salary each had lost as a result of his unjust removal from office and awarded Rodonich and Lawro punitive damages against certain of the defendants on their LMRDA claims. The jury also awarded three dollars each to Rodonich, Chotowicky and Lawro on their RICO claims against Sherman and McNair.

On March 14, 1986, the court entered judgment in accordance with these verdicts and dismissed the contract claim and LMRA claim against LIUNA pursuant to its pretrial order. Shortly thereafter, Diduck brought a motion for judgment notwithstanding the verdict, which was denied on May 21, 1986. These appeals and cross-appeals followed.

## DISCUSSION

Plaintiffs Rodonich, Chotowicky and Lawro argue that Judge Cannella improperly instructed the jury regarding LIUNA's liability for the wrongful acts of Local 95 and the evidence needed to support an award of damages for emotional distress. Plaintiffs also argue that LIUNA is liable as a matter of law on all claims. Plaintiff Diduck argues that the district court erred in denying his motion for judgment notwithstanding the verdict. Cross-appellants argue that plaintiffs' LMRA and LMRDA claims are barred by a six month statute of limitations. We consider each claim in turn.

## A. *LIUNA's Liability*

The primary issue presented by this appeal concerns the liability of an international union when, in the course of carrying out its internal appellate function, it affirms the imposition of unlawful discipline by one of its locals upon a union member. Plaintiffs advance several legal theories to support their claim that LIUNA is liable for affirming discipline imposed on them by Local 95. First, plaintiffs contend, under common law principles of agency, that an international union is liable when it ratifies the acts of its agent, the Local, with full knowledge of those acts. Second, again under common law agency principles, plaintiffs argue that LIUNA is vicariously liable for the acts of the Local as its principal, regardless of ratification. Third, plaintiffs claim that LIUNA is directly liable as a coparticipant in the scheme to suppress dissent within Local 95. Finally, based on contract theory, plaintiffs contend that LIUNA is liable for breaching a duty imposed by its constitution to decide all appeals fairly. We disagree and affirm the part of the judgment that so held.

### 1. *Ratification*

The success of plaintiffs' LMRDA claims depends on proof that their retaliatory discharge from office was part of an overall scheme to suppress dissent within the union. *See Cotter v. Owens*, 753 F.2d 223, 230 (2d Cir.1985). Appellants hope to establish LIUNA's liability through the common law agency theory of ratification. In response, LIUNA argues that it cannot be held liable for mere affirmance of discipline absent a showing of bad faith or fraud. *See International Brotherhood of Electrical Workers v. NLRB*, 487 F.2d 1113, 1129 (D.C.Cir.1972), *cert. denied*, 418 U.S. 904–05, 94 S.Ct. 3194, 41 L.Ed.2d 1152 (1974).

It is far from settled whether common law agency principles govern an international union's LMRDA liability for acts of a union local. A plain reading of LMRDA's liability and enforcement provisions reveals that Congress did not distinguish between international and local labor organizations with regard to their liability under the Act. *See* 29 U.S.C. §§ 412, 529 (1982).

Agency principles frequently have been applied to federal labor law generally. For example, in *NLRB v. Local Union No. 46, Metallic Lathers & Reinforcing Iron Workers*, 727 F.2d 234, 237 (2d Cir.1984), we found an international union liable under the National Labor Relations Act (NLRA) for ratifying the imposition of unlawful discipline through its internal appellate process. Liability under an agency theory also applies to "violation[s] of contracts ... between any ... labor organizations" under the LMRA. *See* 29 U.S.C. § 185(b); *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–17, 100 S.Ct. 410, 413–14, 62 L.Ed.2d 394 (1979). In *Aguirre v. Automotive Teamsters*, 633 F.2d 168, 170–74 (9th Cir.1980), the Ninth Circuit specifically applied agency theory to LMRDA claims to hold a union liable for the acts of its officers who infringed voting rights of union members. Finally, a union may be held liable under the Norris-La-Guardia Act "for the unlawful acts of ... agents" provided that there exists "clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." 29 U.S.C. § 106 (1982).

Our *Metallic Lathers* decision applied common law principles of agency to an unfair labor practice claim in a fact situation similar to this one—the liability of an international union for having affirmed, through the intraunion appellate process, the imposition of unlawful discipline on union members by a union local. Because such a claim can either be brought as an unfair labor practice claim under the NLRA or as a free standing LMRDA claim, *see, e.g., Doty v. Sewall*, 784 F.2d 1, 7 (1st Cir.1986) (recognizing an overlap between section 8(b)(1)(A) of the NLRA and sections 411 and 412 of the LMRDA); *Grand Lodge of International Association of Machinists v. King*, 335 F.2d 340, 346–47 (9th Cir.), *cert. denied*, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964); *cf.* 29 U.S.C. § 523(a) (1982), and because the policies underlying the NLRA closely parallel those underlying

the LMRDA, we are persuaded that the same standards of agency should govern both types of claims.

■ We next consider the standard of ratification that should be applied in this case. Under general principles of common law, "ratification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it." *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767, 773 (2d Cir.1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973); *see also* Restatement of Agency 2d ¶¶ 91, 93–100. Plaintiffs in the instant case were required to prove by clear and convincing evidence that Local 95 engaged in a purposeful and deliberate attempt to suppress dissent within the union. *See Newman v. Local 1101*, 570 F.2d 439, 445–46 (2d Cir.1978); *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973). Therefore, we hold that ratification would occur if LIUNA affirmed the discipline imposed on plaintiffs with full knowledge that it was part of an overall scheme to suppress dissent in violation of the LMRDA.[1]

■ Plaintiffs contend that, based on the facts of this case, LIUNA must be held liable as a matter of law for ratifying the discipline imposed by Local 95's trial board. We disagree. Rodonich, Chotowicky and Lawro each were disciplined for failure to fulfill their duties as union officials. Nothing on the face of these charges suggested a scheme to suppress dissent within Local 95. Instead, discipline was based on concrete violations of official duties. LIUNA's review board was also faced with evidence of a bitter factional dispute within Local 95. Certainly, LIUNA was not required to accept either party's version of the events as true. We, therefore, conclude that plaintiffs' mere allegations of unlawful discipline were insufficient to establish LIUNA's full knowledge of Local 95's conduct as a matter of law.

■ Plaintiffs next attack the district court's instruction on the issue of ratification. Objections were made at trial to the following portion of the jury charge:

The mere fact that the International had oral or written statements or letters from plaintiffs and others regarding the events occurring in Local 95 does not establish full knowledge of the International of the facts asserted in those statements and letters. These statements and letters were merely allegations of fact.

J.App. at 612.

Plaintiffs argue that, under this instruction, because LIUNA could not be deemed to obtain knowledge of the scheme from plaintiffs' only evidence, *i.e.*, the oral and written statements and letters, only an outright admission by LIUNA that they knew of the scheme would suffice to establish full knowledge. Plaintiffs, therefore, complain that this instruction had the effect of directing a verdict against them. We do

---

1. LIUNA urges us to craft a broad protection for international unions engaged in reviewing local union disciplinary action. According to LIUNA, liability should be imposed only where the international acts in bad faith or is guilty of fraud. Without such protection, "labor organizations would likely be discouraged from establishing and maintaining internal appellate processes." Br. of LIUNA at 34. LIUNA cites *International Brotherhood of Electrical Workers v. NLRB*, 487 F.2d 1113 (D.C.Cir.1972), *cert. denied*, 418 U.S. 904–05, 94 S.Ct. 3194, 41 L.Ed.2d 1152 (1974) (*IBEW*), in support of its contention.

In *IBEW*, the District of Columbia Circuit upheld a cease and desist order against an international union for affirming discipline imposed unlawfully on union members by a union local. *Id.* at 1128–29. The court also held, however, that the international could not be held liable in *damages* for mere affirmance of unlawful discipline where the international performs its appellate function in good faith and in the absence of fraud. *Id.* at 1129; *see also People ex rel. Solomon v. Brotherhood of Painters, Decorators and Paperhangers of America*, 218 N.Y. 115, 112 N.E. 752, 754 (1916). *IBEW* was based on violations of the NLRA rather than the LMRDA.

We do not read *IBEW* as propounding a novel theory of liability or eschewing traditional concepts of agency liability in the present context. The *IBEW* Court specifically stated that "[t]he International Union should only be held liable for the illegal fines collected by Local 134, if the [local] union acted as its agent." 487 F.2d at 1129. In any event, we see little difference between the "bad faith/fraud" formulation espoused by LIUNA and the "ratification with full knowledge" standard we adopt today. Ratification with full knowledge of unlawful discipline necessarily amounts to bad faith.

not agree. Judge Cannella did not instruct the jury to discredit plaintiffs' evidence. The district court merely admonished the jury not to accept plaintiffs' allegations at face value in determining whether LIUNA possessed full knowledge of a scheme to suppress dissent. As we have already noted, LIUNA was not required to credit any party's version of the events when reviewing Local 95's disciplinary action. The jury, however, remained free to consider whether the probative worth of plaintiffs' evidence was sufficient to create an inference of full knowledge on the part of LIUNA. Therefore, we find no error in this portion of the district court's charge.

■ Plaintiffs also objected at trial to a portion of the jury charge that insulates LIUNA from any obligation to correct wrongdoing by the Local:

> The International has no affirmative obligation to act to correct the unlawful acts of its affiliated local union such as Local 95 or their officers, even though LIUNA, or the International, may have had knowledge of those unlawful acts.
>
> . . . .
>
> You may find the International liable for the removal of the plaintiffs Rodonich, Chotowicky and Lawro if you find that the International denied plaintiffs Rodonich[,] Chotowicky and Lawro internal union appeals with full knowledge of the overall scheme to suppress the dissent in Local 95 or that the International acted and participated in such scheme.

J.App. at 611–12. We find no fault with this instruction. Judge Cannella's charge simply makes clear that LIUNA has no independent duty to intervene in the affairs of Local 95. This is established law, *see Carbon Fuel*, 444 U.S. at 218–19, 100 S.Ct. at 414–15; *United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 395, 42 S.Ct. 570, 577, 66 L.Ed. 975 (1922), and was correctly relayed to the jury.

### 2. *Vicarious Liability*

■ Plaintiffs next argue that LIUNA should be held vicariously liable as a principal for the acts of its agent, Local 95. The district court considered plaintiffs' argument and specifically rejected it, J.App. at 56, finding that Local 95 alone had the power to impose discipline. According to the district court, Local 95 could not be considered LIUNA's agent for purposes of imposing discipline on union members because the Local acted in its own behalf, not LIUNA's.

In response to Judge Cannella's ruling, plaintiffs now argue that LIUNA had exclusive power to interpret constitutional provisions that authorize discipline. LIUNA argues that plaintiffs also exercised sufficient supervisory power to render Local 95 an agent of LIUNA.

Plaintiffs' arguments are unpersuasive. First, it is well settled that the mere exercise of supervisory powers is insufficient to render the affiliate union an agent of the international. *Coronado Coal Co. v. United Mine Workers*, 268 U.S. 295, 300–01, 45 S.Ct. 551, 552–53, 69 L.Ed. 963 (1925); *Shimman v. Frank*, 625 F.2d 80, 97–99 (6th Cir.1980); *Barefoot v. International Brotherhood of Teamsters*, 424 F.2d 1001, 1004 (10th Cir.), *cert. denied*, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1970); *United Brotherhood of Carpenters v. NLRB*, 286 F.2d 533 (D.C.Cir.1960). Second, there was no specific agency relationship between the two unions for purposes of imposing discipline as alleged. Although it is true that LIUNA has power to interpret its constitution, the power to impose discipline rests with the Local. Uniform Local Union Constitution, Arts. III, XII as amended Sept. 14–18, 1981; J.App. at 73. It is the Local, not LIUNA, that has power to initiate and decide disciplinary matters. Any member may bring charges against another member by filing those charges with Local 95. After a hearing before the Local Union Trial Board, a recommendation is made to the members who vote to approve or reject the recommendation. Only after membership action may an appeal be taken to LIUNA. On appeal, LIUNA merely reviews the Local Union Trial Board's decision without conducting a trial *de novo*. Because Local 95 does not act at the direction of LIUNA at any stage in the proceedings prior to appellate review, there exists no

basis for finding that Local 95 was LIU-NA's agent in this disciplinary matter.

### 3. *Co-participant Liability*

 Plaintiffs argued in the district court that LIUNA should be liable as a co-participant in the scheme to suppress dissent within Local 95. The jury rejected plaintiffs' argument. On appeal, plaintiffs contend that the district court failed to instruct the jury on this theory of liability.

Judge Cannella's charge, however, adequately presented the theory of co-participant liability to the jury.

> The International may be held liable with respect to a particular claim if you find that it instigated, supported, ratified, encouraged *or otherwise participated in any act committed by Local 95 or the individual defendants.*

J.App. at 606 (emphasis added). The court gave a similar instruction in another portion of its charge as well. *See* J.App. at 612–13. Clearly, the jury was instructed that it could find LIUNA liable if LIUNA had participated in unlawful discipline. Plaintiffs' claims to the contrary are meritless. Likewise, plaintiffs' argument that no reasonable jury could find that LIUNA did not participate in the scheme is without support in the record. No evidence was presented that LIUNA instigated or in any way became directly involved in a scheme to suppress dissent. We, therefore, reject plaintiffs' claims regarding co-participant liability.

### 4. *Breach of Union Constitution*

██ Plaintiffs assert that, under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, LIUNA is liable for having breached its constitution by failing to afford plaintiffs a fair hearing. In dismissing plaintiffs' claim, Judge Cannella decided that he could not act as a "superreview board" because plaintiffs cited no specific constitutional provision alleged to have been violated. On appeal, plaintiffs now allege specific constitutional violations.

Local 95's constitution provides that "[t]he hearing and trial shall be conducted in an orderly, fair and impartial manner and should assure the full presentation of all facts to the Trial Board. . . ." Uniform Local Union Constitution, Art. XII, § 4; J.App. at 73. LIUNA's constitution adopts these procedures for trials conducted by local unions. Plaintiffs argue that "LIUNA breached [its constitution] when it knowingly affirmed appellants' discipline, imposed without a fair hearing." Br. of Plaintiffs at 16. We reject this claim for the same reason that we reject plaintiffs' ratification theory. There is simply no evidence to support a finding that LIUNA acted with full knowledge of any impropriety in the proceedings conducted by Local 95. Plaintiffs' section 301 claims, therefore, must fail.

### B. *Plaintiff Diduck's Claims*

Diduck claims that Judge Cannella erred in his charge to the jury regarding discipline imposed by Local 95. The charges filed against Diduck stated that he had "wilfully slandered" defendant Adams in a letter addressed to Senyshyn with copies to LIUNA. According to the letter, Adams threatened Diduck with bodily harm on one occasion. Diduck also heavily criticized Senyshyn's union activities, including Senyshyn's failure to take action against union members who stormed Rodonich's office.

There is no question that discipline of a union member for even libelous speech is a violation of the LMRDA. *Salzhandler v. Caputo*, 316 F.2d 445, 446 (2d Cir.), *cert. denied*, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); *see Petramale v. Local No. 17 of Laborers International Union*, 736 F.2d 13, 18 (2d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984). The only question presented here is whether Local 95 actually disciplined Diduck. After a trial, Local 95 found Diduck "guilty" of the charges, fined him $500 and issued a "warning" that Diduck's union membership would be revoked if he committed further misconduct. No effort was made to collect the fine.

 The district court instructed the jury regarding discipline as follows:

You must determine whether this fine was enforced against Diduck. If not, he has suffered no discipline unless you find that the disciplinary proceedings were brought in bad faith and Diduck suffered injury to his free speech as a result of these proceedings.

J.App. at 614. Objections to the charge were timely made. J.App. at 630–31. Because Diduck conceded that he did not pay the fine, he argues that the instruction was tantamount to directing a verdict against him. We agree. Lack of enforcement of the fine is irrelevant. Clearly, Diduck was penalized for the assertion of protected rights. Once Local 95 rendered its decision, Diduck became a debtor of the Local. Failure to pay the fine presumably would result in further sanctions, including the possibility of expulsion from the union. Moreover, the language in Judge Cannella's instruction permitting the jury to find discipline if the proceedings were brought in bad faith and if Diduck suffered injury to his free speech did not remedy this error. Diduck should have been permitted to prove that he was disciplined merely by showing that the fine was imposed. The alternative elements of bad faith and injury to free speech are more difficult to prove and, therefore, do nothing to alleviate the prejudicial impact of the charge.

Because the imposition of a fine constituted discipline in violation of Diduck's rights under the LMRDA, a directed verdict should be entered on remand in favor of Diduck on the issue of liability both as against Local 95 and LIUNA. LIUNA is liable for having ratified Local 95's action with full knowledge of its unlawful character because the charges of slander were violative of the LMRDA on their face. On remand, Diduck may seek damages for Local 95's imposition of unlawful discipline.

### C. Other Claims

In its cross-appeal, LIUNA argues that plaintiffs' claims are time barred by a six month statute of limitations found in section 10(b) of the NLRA. LIUNA contends that *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), provides support for "borrowing" a limitations period from federal law, rather than state law, for claims brought under the LMRDA, which contains no statute of limitations. The district court rejected LIUNA's argument and adopted a three year state statute of limitations applicable in federal civil rights actions. We agree with that decision.

In *DelCostello*, the Supreme Court held that the six month federal statute of limitations found in section 10(b) of the NLRA was the most appropriate for claims asserted under the LMRA. In so holding, the Court departed sharply from the traditional practice of borrowing limitations periods for federal statutes from state law. This departure was justified, according to the Court, "[i]n ... circumstances [where] state statutes of limitations [are] unsatisfactory vehicles for the enforcement of federal law." 462 U.S. at 161, 103 S.Ct. at 2289. A six year state limitations period applicable to contract actions was rejected in *DelCostello*. The Court reasoned that the disruptive nature of a hybrid action brought under section 301 of the LMRA against an employer, together with a fair representation claim brought against a union, impacted directly on the finality of private settlements under the collective bargaining system. This disruption justified the adoption of the six month statute found under section 10(b) of the NLRA, which Congress established to promote stable bargaining relationships.

We have previously held that *DelCostello*'s reasoning should be narrowly construed. "The particularized circumstances of the hybrid section 301/duty of fair representation suit, which inevitably involve an immediate and direct impact on labor-management relations, demarcate the limits of *DelCostello*'s reach." *Monarch Long Beach Corp. v. Soft Drink Workers*, 762 F.2d 228, 231 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985). In this case, no immediate and direct impact on labor-management relations exists. The concerns for protecting the finality of private settlements are not implicated in a suit alleging

infringement of union members' rights under the LMRDA. Union democracy claims do not attack the compromise reached between a union and an employer. *See Doty*, 784 F.2d at 7. Such a suit does not implicate the collective bargaining process. Instead, LMRDA claims are asserted only against the union and concern disruption of internal union democracy. Any impact felt upon the collective bargaining process is, at most, tangential and certainly not of the direct nature found controlling in *DelCostello*. We adhere to *DelCostello*'s admonition, therefore, that its holding "should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action" and that it should not be interpreted "to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy." 462 U.S. at 171, 103 S.Ct. at 2294.

Plaintiffs urge the adoption of the three year statute of limitations governing personal injury actions in New York, C.P.L.R. § 214(5), for suits arising under the LMRDA. Although personal injury actions provide a less than perfect analogy to LMRDA claims, state limitations periods for personal injury claims have been applied to federal civil rights laws. *E.g., Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). Civil rights violations bear a strong resemblance to claims asserted under the LMRDA, such as free speech, freedom of assembly and right to vote claims. The same concerns prompting the use of a three year limitations period for civil rights claims are also present in LMRDA suits. For instance, a plaintiff must be given sufficient time to discover defendant's wrongdoing, but not so much time as to allow witnesses to disappear, memories to fade or to otherwise impair the ability of the defendant to mount a defense. We, therefore, deem New York's personal injury statute of limitations to be the most appropriate state limitations period to govern federal LMRDA claims. Accordingly, we agree with the district court's conclusion that plaintiffs' suit was timely filed.[2]

The final issue on this appeal concerns the district court's instruction on mental distress. The court instructed the jury as follows:

Moreover, you must find that the plaintiff you are considering has proven a basis for such damages by the fair preponderance of credible evidence. The mere fact that a plaintiff may assert that he has suffered emotional or mental distress or loss of reputation is an inadequate basis as a matter of law for awarding such damages. You may not presume that the plaintiff suffered mental or emotional distress simply because their [sic] rights were violated. Rather, you must find such mental or emotional distress based upon the particular plaintiff's physical condition or medical evidence. You are limited by the testimony as it was given during the course of the trial.

J.App. at 639–40. Objections to the charge were noted by the district court. *Id.* at 641–42. Plaintiffs argue that this instruction was erroneous because it prohibited an award of damages for emotional distress or injury to reputation without a finding of physical injury. While we agree that this may be the fair import of the instruction, we cannot agree that the charge was erroneous.

The qualification that claims of emotional distress be supported by a physical manifestation of injury is an appropriate safeguard against the award of excessive and speculative damages against unions. "Such awards could deplete union treasuries, thereby impairing the effectiveness of unions as collective-bargaining agents." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 50–51, 99 S.Ct. 2121, 2127, 60 L.Ed.2d 698 (1979) (punitive damages not recoverable in fair representation suits against a union). We do not suggest that damage awards for emo-

---

**2.** Plaintiffs' cause of action against LIUNA accrued on receipt of LIUNA's decision to affirm Local 95. This letter was dated February 23, 1982, and, presumably, was received a short time thereafter. Plaintiffs filed their complaint on August 23, 1982.

tional distress are inappropriate in LMRDA suits. Such awards are proper forms of compensatory relief for actual injury. However, we deem it advisable, in light of the significant impact on union coffers, to require a physical manifestation of emotional distress before permitting an award. We, therefore, find ourselves in agreement with the rule in the Ninth Circuit that damages for emotional distress are not recoverable under the LMRDA absent a showing of physical injury. *See, e.g., Bloom v. International Brotherhood of Teamsters*, 752 F.2d 1312, 1315 (9th Cir. 1984) (noting rule that actual injury must be demonstrated); *Bise v. International Brotherhood of Electrical Workers*, 618 F.2d 1299, 1305 (9th Cir.1979) (jury's award of damages for emotional distress vacated where evidence failed to show actual harm), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Rafferty*, 348 F.2d 307, 315 (9th Cir.1965) (emotional distress, standing alone, is not a basis for awarding damages under LMRDA).

## CONCLUSION

We affirm the decision of the district court as to all claims against LIUNA except those of plaintiff Diduck. Regarding Diduck's claims, we reverse the decision on the issue of liability and remand the case to the district court for entry of a directed verdict in favor of Diduck and for further proceedings on the issue of damages. The decision is affirmed as to LIUNA's cross-appeal regarding the statute of limitations and plaintiffs' claim regarding the instruction on emotional distress.