853 F.2d 1046
 128 L.R.R.M. (BNA) 3228, 109 Lab.Cas. P 10,658
 Michael A. LEGUTKO, Patrick Walters, Steven Agnostakios,
John T. Golinski, Michael Cozier, Arthur Mason, Ronald
Martini and Gerald Bauer, on behalf of themselves and others
similarly situated, Plaintiffs-Appellants,
v.
LOCAL 816, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and
International Brotherhood of Teamsters, and
Wallack Freight Lines, Defendants-Appellees.
 No. 962, Docket 87-9050.
 United States Court of Appeals,
Second Circuit.
 Argued April 19, 1988.
Decided Aug. 5, 1988.
 
 Arthur Z. Schwartz, New York City (Clifton & Schwartz, New York City, of counsel), for plaintiffs-appellants.
 J. Warren Mangan, Long Island City, N.Y. (O'Connor & Mangan, Long Island City, N.Y., of counsel), for defendant-appellee Local 816.
 Stanley M. Berman, New York City (Ann E. O'Shea, Susan Davis, Cohen, Weiss and Simon, New York City, Joseph Santucci, Washington, D.C., of counsel), for appellee Int'l Broth. of Teamsters.
 Arthur Liberstein, New York City (Herbert New, Clifton, N.J., of counsel), for defendant-appellee Wallack Freight Lines.
 Before FEINBERG, Chief Judge, MESKILL and PIERCE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 In this action, we must determine whether certain causes of action claiming that a provision of a labor contract was executed and implemented in violation of a union constitution are time barred. Plaintiffs-appellants, employees or former employees of defendant-appellant Wallack Freight Lines (Wallack), assert several causes of action based upon the alleged improper ratification of a provision to a collective bargaining agreement between Wallack and defendant-appellee Local 816, International Brotherhood of Teamsters (Local 816). In a series of decisions, the United States District Court for the Eastern District of New York, Wexler, J., held that the six month statute of limitations adopted in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), applied to the causes of action that alleged violations of section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185(a) (1982) (LMRA), and section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 411(a)(1) (1982) (LMRDA). These causes of action were then dismissed as time barred.
 
 
 2
 For the following reasons, we affirm.
 
 BACKGROUND
 
 3
 Although the parties disagree on certain factual points, the critical facts on which this case turns are not in dispute. According to plaintiffs, from March 1, 1982 to March 31, 1985, the drivers at Wallack were employed pursuant to the National Master Freight Agreement and the New Jersey-New York Area General Trucking Supplemental Agreement (the Supplemental Agreement) entered into by defendant-appellee International Brotherhood of Teamsters (IBT) and various national employer associations to which Wallack belonged. Article 52, Section 2(a)(1) of the Supplemental Agreement provided that "[a]ll hours worked in excess of eight (8) hours per day, Monday to Friday inclusive, shall be paid for at the rate of time and one-half (1 1/2)...." See J.App. 106.
 
 
 4
 In June 1982, Wallack proposed a one year rider to the Supplemental Agreement that provided that employees would receive straight time pay, rather than overtime pay at the rate of time and one-half, for the first ten hours worked in a single day. Local 816 conducted a vote on this proposal, and the vote was twelve in favor of adoption and either twenty or twenty-three opposed. Another vote was conducted on the rider several days later, allegedly without advance notice. The vote this time was eighteen to seventeen in favor of the rider with at least three union members not present. Local 816 then executed and implemented the rider. The plaintiffs claim that the ratification process violated Article 16, Section 4 of the Teamsters International Constitution (the International constitution), which provides that "[i]f amendments to local or area supplements or riders to the Master Agreement are voluntarily negotiated during the term of such Agreement, such amendments must be approved by a secret ballot majority vote of the affected members...." See J.App. 109.
 
 
 5
 According to the defendants, in 1983 Wallack and Local 816 negotiated a new collective bargaining agreement, which was presented to employees for a ratification vote in early June. The portion of the new agreement dealing with the overtime proposal was separately submitted to the employees for a vote, and was rejected by a majority but not two-thirds of the employees. Defendants concluded that the overtime provision was consequently ratified under Article 12, Section 1(b) of the International constitution, which provides in part:
 
 
 6
 Contracts may be accepted by a majority vote of those members involved in negotiations and voting, or a majority of such members may direct further negotiations before a final vote on the employer's offer is taken.... When, in the judgment of the Local Union Executive Board, an employer has made a final offer of settlement, such offer must be submitted to the involved membership and can be rejected only by a two-thirds ( 2/3) vote of the members.... If a settlement cannot be reached, the Local Union Executive Board shall order a secret ballot to be taken and it shall require a two-thirds ( 2/3) majority of those members of the Local Union involved in such negotiations and voting to adopt a motion to strike.... The failure of such membership to authorize a strike upon rejecting the employer's last offer shall require the Local Union Executive Board to accept such last offer or such additional provisions as can be negotiated by it.
 
 
 7
 See J.App. 145. Thus, because Local 816 considered the overtime provision to be part of a new single employer agreement negotiated and agreed to on an individual basis between Local 816 and Wallack, it concluded that it was able to accept the overtime proposal unless it was rejected by two-thirds of the Local's members.
 
 
 8
 In June 1983, Local 816 conducted a vote on whether to extend the rider for another year, and a majority of the workers, but less than two-thirds, voted to reject the extension. Local 816 then executed a one year extension of the provision.
 
 
 9
 Plaintiff Legutko, whose employment by Wallack terminated on May 31, 1983, wrote to the International union on August 16, 1983, requesting that the rider be rescinded and that the pay lost by the Local 816 membership over the past fifteen months be recovered. The IBT undertook an investigation concerning Legutko's charges. The investigation terminated in September 1983, although Legutko did not receive any notice of the probe or its termination.
 
 
 10
 On April 5, 1984, plaintiffs commenced this suit alleging several causes of action against Local 816, the IBT and Wallack based on the alleged violations of the International constitution in connection with the ratification of the overtime proposal. In May 1984, Local 816 conducted another vote on extending the rider, with twenty-three employees voting against the extension and eighteen voting for it. Apparently the President of Wallack had insisted on majority approval of the overtime provision, and so Local 816 announced that the extension of the rider had not been approved. Starting in July 1984, Wallack resumed paying its employees for all overtime work at time and one-half. In September 1984, however, another vote was conducted on the overtime rider and this time a majority of employees voted in favor of the provision. Wallack once again began to pay straight time wages for the first two hours of overtime.
 
 
 11
 The plaintiffs subsequently submitted a second amended complaint in February 1985 that contained nine causes of action. The first five causes of action, which were brought pursuant to section 301(a) of the LMRA and section 101(a)(1) of the LMRDA, alleged that Local 816's execution and implementation of the overtime provision in 1982 and its extension in 1983 violated the International constitution because the provision had been rejected by a majority of Local 816 members. The sixth cause of action alleged that Wallack breached its collective bargaining agreement by failing to pay time and one-half to plaintiffs for overtime work, and the seventh alleged that Wallack's failure to pay the overtime pay violated section 7(a)(1) of the Fair Labor Standards Act, 29 U.S.C. Sec. 207(a)(1) (1982). The eighth cause of action was brought in part under section 101(a)(1) of the LMRDA, and alleged that the May 1984 vote denied plaintiffs their equal right to vote. Finally, the ninth cause of action concerned an alleged threat made to Legutko in August 1982 by an officer of Wallack, in violation of 29 U.S.C. Sec. 215(a)(3) (1982).
 
 
 12
 On March 29, 1985, Judge Wexler issued a memorandum and order striking the first five causes of action as time barred. See Legutko v. Local 816, International Brotherhood of Teamsters, 606 F.Supp. 352 (E.D.N.Y.1985). Specifically, the court found that the six month statute of limitations adopted in DelCostello applied both to the claims concerning violation of section 101(a)(1) of the LMRDA and to the claims alleging violations of section 301(a) of the LMRA. Id. at 355-57.
 
 
 13
 Plaintiffs moved three times for reconsideration of the dismissal of the fourth and fifth causes of action, which concerned the 1983 extension. In these motions, they argued that the statute of limitations should be tolled for four months under section 101(a)(4) of the LMRDA, 29 U.S.C. Sec. 411(a)(4), because Legutko was pursuing internal appeal procedures through his letter of August 16, 1983. In decisions dated April 16, 1985, May 13, 1985 and August 9, 1985, Judge Wexler denied these motions.
 
 
 14
 On August 28, 1985, Judge Wexler granted Wallack's motion to dismiss the sixth cause of action, which alleged that Wallack breached the collective bargaining agreement by not paying overtime. He held that this cause of action, which he understood to be brought pursuant to section 301(a) of the LMRA, was subject to a six month statute of limitations, and was time barred. See J.App. 41-42. He also dismissed the eighth cause of action insofar as it was duplicative of the first six causes of action, see id. at 42, and it was dismissed in its entirety pursuant to a stipulation among the parties on June 23, 1986. See J.App. 259.
 
 
 15
 The remaining causes of action were also dismissed,[1] and plaintiffs then brought this appeal.
 
 I.
 A.
 
 16
 Section 301 of the LMRA confers jurisdiction on federal courts in actions involving collective bargaining agreements. The LMRA does not provide any specific limitation period for initiating such suits, however. Accordingly, courts have frequently been confronted with questions concerning the timeliness of section 301 suits. The Supreme Court has provided guidance in several decisions. In International Union, United Automobile Workers of America v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court considered an action brought by a union against an employer pursuant to section 301 to recover vacation pay that was allegedly due discharged employees under the terms of a collective bargaining agreement. The Court first noted that the question of timeliness "is clearly a federal question, for in Sec. 301 suits the applicable law is 'federal law, which the courts must fashion from the policy of our national labor laws.' " Id. at 701, 86 S.Ct. at 1110 (quoting Textile Workers v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957)). The Court then rejected the suggestion that it devise a uniform statute of limitations for section 301 suits, id. 383 U.S. at 701-05, 86 S.Ct. at 1110-13, and held that the timeliness of such suits "is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations," id. at 704-05, 86 S.Ct. at 1112-13. Noting that the action for vacation pay was basically an action for damages based on an employer's alleged breach of a collective bargaining agreement, which closely resembles an action for breach of contract, id. at 705 n. 7, 86 S.Ct. at 1113 n. 7, the Court applied the state's six year statute of limitations for contracts not in writing. The Court expressly disclaimed that its holding in this case dictated the result in all other section 301 actions, however, stating "[w]hether other Sec. 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question." Id.
 
 
 17
 In United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court again considered the question of the timeliness of a section 301 action. In this case, the plaintiff alleged both that his union had breached its duty of fair representation and that his employer had unlawfully discharged him. The Court rejected the contention that the action was one for breach of contract; rather, it held that the suit was more comparable to an action to vacate an arbitration award, and that the state's ninety day period for bringing such actions was therefore applicable. Justice Stewart argued, however, that rather than applying either the state limitations period for breach of contract actions or that for actions to vacate an arbitration award, it was more appropriate to impose the statute of limitations established in section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b) (1982) (NLRA). Id. at 65, 101 S.Ct. at 1565 (Stewart, J., concurring in the judgment). He first noted that the case before the Court was distinguishable from Hoosier because it was brought by an employee against both his employer and his union, and so was a "hybrid 'Sec. 301 and breach of duty [of fair representation] sui[t].' " Id. at 66, 101 S.Ct. at 1565 (quoting Vaca v. Sipes, 386 U.S. 171, 197 n. 18, 87 S.Ct. 903, 920 n. 18, 17 L.Ed.2d 842 (1967)). In addition, he reasoned that although the Court in Hoosier held that the type of dispute it was considering there did not involve " 'those consensual processes that federal labor law is chiefly designed to promote--the formation of the ... agreement and the private settlement of disputes under it,' " the type of hybrid suit before the Court in Mitchell did implicate those concerns. Id. (quoting Hoosier, 383 U.S. at 702, 86 S.Ct. at 1111). Because the same "balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system" was involved both in actions brought pursuant to section 10(b) of the NLRA and in hybrid section 301 actions, Justice Stewart concluded that section 10(b)'s six month limitation period should be applied to the hybrid action in Mitchell. Id. 451 U.S. at 70-71, 101 S.Ct. at 1567-68.
 
 
 18
 Approximately two years later, in DelCostello, the majority of the Court adopted Justice Stewart's reasoning concerning the proper statute of limitations to apply in a hybrid suit by an employee against his employer and his union because of the employer's alleged breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the resulting grievance. Although the Court acknowledged the rule that it had relied on in Hoosier that courts generally apply the most closely analogous state statute of limitations when there is no federal statute of limitations expressly applicable, it concluded that there was no close analogy in state law to the type of hybrid suit that was at issue. 462 U.S. at 165, 103 S.Ct. at 2291. The Court then noted that there was a "family resemblance" between breaches of a union's duty of fair representation and unfair labor practices, id. at 170, 103 S.Ct. at 2293, and concluded that in light of the concerns articulated by Justice Stewart in Mitchell, the statute of limitations established in section 10(b) of the NLRA was the most appropriate one to apply to the hybrid suit.
 
 B.
 
 19
 In the instant case, plaintiffs contend that the principles established in Hoosier, rather than DelCostello, are controlling. Specifically, they note that their section 301 claims involve violations of a union constitution, and under New York law, a union's constitution and bylaws are treated as contracts between a union and its members. They thus conclude that these causes of action present "pure" section 301 claims similar to that addressed in Hoosier, rather than hybrid claims, and so New York's six year statute of limitations for contract violations, New York C.P.L.R. Sec. 213(2) (McKinney 1972 & Supp.1988), is applicable.
 
 
 20
 We do not agree. Although plaintiffs' claims are cast in terms of an alleged violation of the union constitution rather than a breach of the union's duty of fair representation, their claims are analogous to those at issue in DelCostello. As in DelCostello, plaintiffs assert in the instant action both that the union acted improperly and that the employer breached the collective bargaining agreement. In addition, plaintiffs in their prayer for relief requested that Wallack be ordered to pay the employees overtime and that both Local 816 and Wallack be held jointly and severally liable "for damages in a sum equal to the amount of overtime pay and other wages [the plaintiffs] were not paid since June 1982; and for liquidated damages in an amount equal to the sum of overtime pay lost (against Wallack only)." See J.App. 226-27. Thus, unlike Hoosier, this is not a suit merely by a union against an employer, but rather is a suit by employees against both the union and the employer, as in DelCostello.
 
 
 21
 Moreover, even if we were to agree with plaintiffs' position that the instant action is not precisely the type of hybrid action at issue in DelCostello because the claims against the union could stand alone, we would still conclude that the reasoning underlying the Court's decision in DelCostello controls. We have previously held that application of the principles enunciated in DelCostello should not be limited "only to nearly identical claims or to hybrid ones." Robinson v. Pan American World Airways, Inc., 777 F.2d 84, 88 (2d Cir.1985). See also Eatz v. DME Unit of Local Union Number 3 of the International Brotherhood of Electrical Workers, 794 F.2d 29, 33 (2d Cir.1986) (applying six month statute to unfair representation claims standing alone because of the "undeniable resemblance and substantial overlap between unfair labor practices and breaches of the duty of fair representation"); Welyczko v. U.S. Air, Inc., 733 F.2d 239, 240 (2d Cir.) (concluding that "same policies" that led Supreme Court to apply six month statute of limitations to hybrid action under section 301 "apply with equal force" to claims under the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. (1982)), cert. denied, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). Rather, the key consideration in determining whether the six month statute of limitations adopted in DelCostello should be applied is whether the suit implicates " 'those consensual processes that federal labor law is chiefly designed to promote--the formation of the collective bargaining agreement and the private settlement of disputes under it.' " See Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, International Brotherhood of Teamsters, 762 F.2d 228, 231 (2d Cir.) (quoting DelCostello, 462 U.S. at 162-63, 103 S.Ct. at 2289-90), cert. denied, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985). See also Robinson, 777 F.2d at 89. Here, because plaintiffs are attacking the manner in which the overtime provision of the collective bargaining agreement was ratified, their claims do relate to the formation of the collective agreement. As the Third Circuit concluded in a similar action concerning claims brought by an employee against his local union and its president for breach of exactly the same provision of the International constitution invoked by plaintiffs in the instant action, "the adequacy of the Local's representation of the members' interests with respect to the policy [at issue] may directly affect the bargaining relationship with the employer," and so the principles enunciated in DelCostello are controlling. Lewis v. International Brotherhood of Teamsters, Local Union No. 771, 826 F.2d 1310, 1316 (3d Cir.1987).
 
 
 22
 In addition, we note that application of the six month NLRA statute of limitations, rather than the six year New York state statute of limitations for contract actions, furthers the federal labor policy of promoting stability in labor relations and expeditious resolution of disputes. As the Supreme Court recognized, the collective bargaining process, "with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later." Mitchell, 451 U.S. at 64, 101 S.Ct. at 1564. This same consideration is critical here. Adopting plaintiffs' position that contract ratifications could be challenged under New York contract law for up to six years after their implementation would disrupt "the entire relationship between company and union," id., and accordingly would undermine the federal labor policy goals of promoting stability and "rapid final resolution of labor disputes," DelCostello, 462 U.S. at 168, 103 S.Ct. at 2292. As we previously concluded, "[s]ix years is simply too long to allow industrial disputes to fester." Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington, 820 F.2d 31, 37 (2d Cir.1987) (rejecting plaintiff's argument that a "pure" section 301 action was at issue and so New York's six year statute of limitations should be applied, rather than the six month limitation established in DelCostello ). Moreover, as this case implicates duties of a union that are central to federal labor law, i.e., negotiating and implementing terms of a collective bargaining agreement, "policy considerations favor [the] uniform statute of limitations [provided in section 10(b) of the NLRA]." Clift v. International Union, United Automobile Workers of America, 818 F.2d 623, 628-29 (7th Cir.1987), petition for cert. filed, 55 U.S.L.W. 3022 (U.S. July 6, 1987). Accordingly, taking into account "the realities of industrial life and the nature of the collective bargaining process," Humphrey v. Moore, 375 U.S. 335, 358, 84 S.Ct. 363, 376, 11 L.Ed.2d 370 (1964) (Goldberg, J., concurring in the result), we hold that the NLRA's six month statute of limitations applies to plaintiffs' section 301 claims.
 
 II.
 
 23
 As is the case with the LMRA, the LMRDA also does not contain an express statute of limitations. Plaintiffs contend that their causes of action brought pursuant to section 101(a)(1) of the LMRDA are subject to New York's three year personal injury statute of limitations, New York C.P.L.R. Sec. 214(5) (McKinney 1972 & Supp.1988). In making this argument, plaintiffs rely solely on our decision in Rodonich v. House Wreckers Union Local 95 of Laborers' International Union, 817 F.2d 967 (2d Cir.1987).
 
 
 24
 Rodonich involved a "political struggle between two warring union factions" for control of a union. Id. at 970. The plaintiffs, who comprised one faction, alleged that defendants, who included members of the rival faction, had, inter alia, violated section 101(a)(1) of the LMRDA and section 301(a) of the LMRA by engaging in a scheme to suppress dissent within the union and unlawfully disciplining them. When we considered the question of the proper statute of limitations to apply to the LMRDA claims, which involved the alleged attempt to suppress dissent within the union, id. at 973, we concluded that New York's three year personal injury statute of limitations governed federal LMRDA claims, rather than section 10(b)'s six month statute of limitations. Id. at 977. Admittedly, this decision contains general language as to why claims under the LMRDA may be governed by this three year period of limitations, rather than the six month period. But in reaching our conclusion, we examined the specific type of LMRDA claims that were at issue in that case, in order to determine the proper statute of limitations. In choosing the three year period, we noted that plaintiffs' claims did not immediately or directly affect labor-management relations, and so "[a]ny impact felt upon the collective bargaining process is, at most, tangential and certainly not of the direct nature found controlling in DelCostello." Id. at 976-77.
 
 
 25
 Rodonich is consistent with our decisions in other labor law cases involving statute of limitations questions, where we also examined the precise type of claim that was at issue. For example, in Monarch, when we concluded that a secondary boycott claim under section 303 of the LMRA, 29 U.S.C. Sec. 187 (1982), was subject to New York's four year statute of limitations for actions involving damages caused by restraint of trade, we relied on the fact that a section 303 action does not involve either a collective bargaining dispute or the labor-management relationship. 762 F.2d at 231-32. We thus concluded that "[l]abor peace will not be disrupted if section 303 suits are not rapidly resolved." Id. at 231. In addition, in Robinson we noted that the "key question" in determining what statute of limitations to apply to the action for wrongful discharge under the Railway Labor Act was "whether the dispute arises out of a labor-management relationship in which uniform and speedy settlement is highly desirable." 777 F.2d at 89. Accordingly, the critical question for us to resolve here is whether the claims at issue implicate " 'those consensual processes that federal labor law is chiefly designed to promote--the formation of the collective agreement and the private settlement of disputes under it,' " DelCostello, 462 U.S. at 163, 103 S.Ct. at 2289 (quoting Hoosier, 383 U.S. at 702, 86 S.Ct. at 1111), not simply whether the action is brought pursuant to the LMRA or the LMRDA.
 
 
 26
 In the instant case, plaintiffs' LMRDA claims, which challenge the execution and implementation of the overtime provision, do arise out of the labor-management relationship and do implicate the policy concerns underlying DelCostello, as did their claims under the LMRA. As the district court concluded,
 
 
 27
 [i]n the instant case, plaintiffs' claims against the union local for violations of equal voting rights under 29 U.S.C. Sec. 411(a)(1) are closely related to breach of contract claims against the employer under 29 U.S.C. Sec. 185. Plaintiffs contend that the employer knew that the local acted illegally, that the employer therefore cannot rely upon the local's ratification of the rider, and that the employer is therefore liable for breach of the contract as the contract would have read without the rider. Consequently, the instant suit is closely analogous to the type of "hybrid" suit involved in DelCostello.
 
 
 28
 606 F.Supp. at 355. We agree, and accordingly hold that plaintiffs' LMRDA claims, like their LMRA claims, are subject to section 10(b)'s six month statute of limitations.
 
 
 29
 We note that this conclusion is consistent with decisions in other circuits. For example, the Seventh Circuit has concluded that the six month limitations period was applicable to a challenge under Title I of the LMRDA, 29 U.S.C. Secs. 411, 412 (1982), to the validity of certain midterm modifications to a collective bargaining agreement. Vallone v. Local Union No. 705, International Brotherhood of Teamsters, 755 F.2d 520, 521-22 (7th Cir.1985) (per curiam). See also Gardner v. International Telegraph Employees Local No. 9, 850 F.2d 518 (9th Cir.1988) (holding that six month statute of limitations governed claim brought under section 104 of the LMRDA, 29 U.S.C. Sec. 414 (1982), based on the union's failure to give an employee a copy of the collective bargaining agreement because such a claim is analogous to an unfair labor practice); Clift, 818 F.2d at 627-29 (holding that employee's claims under the LMRDA and the LMRA that union and employer improperly entered into new contract were governed by six month statute of limitations); Adkins v. International Union of Electrical Workers, AFL-CIO-CLC, 769 F.2d 330, 334-35 (6th Cir.1985) (holding that the six month limitation period applied to claims against union under LMRDA in a hybrid action against employer and union).
 
 III.
 
 30
 Plaintiffs alternatively maintain that even if DelCostello applies, their fourth and fifth causes of action, which relate to the 1983 vote, are not barred because the statute of limitations should be tolled for four months.[2] In making this argument, plaintiffs rely on section 101(a)(4) of the LMRDA, 29 U.S.C. Sec. 411(a)(4), which provides:
 
 
 31
 No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, ... Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.
 
 
 32
 Specifically, Legutko alleges that he invoked internal union grievance procedures by writing his letter of August 16, 1983, and consequently, the statute of limitations should have been tolled for the four months when he was waiting for a response to his letter. Because the disputed vote occurred on June 9, 1983, and the complaint was filed on April 5, 1984, just less than ten months later, plaintiffs contend that their claims would have been timely even under a six month statute of limitations if the statute were tolled for these four months.
 
 
 33
 We conclude, however, that the statute should not be tolled in the circumstances presented in this case. First, as we noted previously, Legutko was no longer employed with Wallack as of May 31, 1983. See J.App. 101. Because he was not employed by Wallack at the time of the June 1983 vote on extending the overtime provision, there is a serious question as to whether he was "aggrieved" by that vote and hence eligible to pursue internal union procedures challenging that vote.[3]
 
 
 34
 Even if he were eligible to pursue such procedures, however, we conclude that Legutko's writing this letter does not suffice to toll the statute of limitations. This letter, which was addressed to Jackie Presser of the General Executive Board of the International union and to the Joint Council No. 16 of the International union, requested that Local 816 be ordered to rescind the overtime rider and that the pay lost by the Local 816 membership over the past fifteen months be recovered. See J.App. 110-11. Plaintiffs allege in their complaint that Legutko's letter "exhausted their internal union remedies." Id. at 71. But under Article 19, Section 3 of the International constitution, which prescribes procedures for appeals to the International union, Legutko should have filed any charges against the local union "in writing in duplicate with the Secretary of the trial body, and [have the charges] served personally or by registered or certified mail on the Secretary-Treasurer of the Local union ... so charged." See id. at 156. The Local union then would have been given thirty days to appear for trial and submit its defense, and Legutko could then have appealed the decision to the General Executive Board. Id. Rather than following these established procedures for filing a grievance, Legutko instead chose to follow his own, informal approach.
 
 
 35
 Informal correspondence should not toll the statute of limitations; " '[o]therwise, a plaintiff could indefinitely delay resolution of Labor disputes merely by bombarding his union with tiresome requests....' " Sosbe v. Delco Electronics Division of General Motors Corp., 830 F.2d 83, 87 (7th Cir.1987) (quoting Dozier v. Trans World Airlines, 760 F.2d 849, 852 (7th Cir.1985)). In Sosbe, the court held that an employee's contacting a lawyer and the bargaining chairman, and sending letters to the Chairman of the Board of her employer and the President of the United Auto Workers, among others, did not toll the statute of limitations because this informal correspondence did not constitute the pursuit of internal union remedies. Id. Similarly, in Saxton v. General Motors Corp., 575 F.Supp. 1212 (N.D.Ohio 1983), aff'd mem., 780 F.2d 1023 (6th Cir.1985), the court held that a union member's decision to write a letter to his international union instead of pursuing his local union internal grievance procedures did not toll the statute of limitations. Specifically, the court concluded that the employee's letter writing was not a "justifiable alternative" to pursuing established appeal procedures, and that it could not "in good conscience, allow the statute of limitations to be tolled whenever a union member decides to attempt his own informal method of changing the minds of the decision-makers," because "[s]uch a rule would lead to chaos, would be inconsistent with national labor policy, and would be impossible of equitable and even-handed application." Id. at 1216-17. Cf. Wozniak v. International Union, United Automobile Workers of America, 842 F.2d 633 (2d Cir.1988) (holding that employee who did not properly follow procedures set forth in union constitution for bringing grievances had failed to exhaust internal remedies and so was precluded from bringing suit). We therefore conclude that Legutko's writing the August 16, 1983 letter does not constitute a proper basis for tolling the statute of limitations.
 
 CONCLUSION
 
 36
 In this case, plaintiffs' actions accrued "no later than the time when plaintiffs knew or reasonably should have known that [the] breach had occurred." Santos v. District Council, 619 F.2d 963, 969 (2d Cir.1980). See also Demchik v. General Motors Corp., 821 F.2d 102, 105 (2d Cir.1987); Eatz, 794 F.2d at 33; King v. New York Telephone Co., 785 F.2d 31, 34 (2d Cir.1986). Because plaintiffs knew of the union's alleged improper activities in connection with the 1983 vote in June 1983, but did not commence their suit until April 1984, almost ten months later, the district court properly dismissed their claims as time barred under the six month statute of limitations applicable to their LMRA and LMRDA claims.
 
 
 37
 Affirmed.
 
 
 
 [1]
 In the memorandum and order dated August 9, 1985, Judge Wexler dismissed the seventh cause of action because he concluded that the plaintiffs were exempt from the overtime provisions of 29 U.S.C. Sec. 207(a)(1). Finally, the ninth cause of action was reassigned to the United States District Court for the Eastern District of New York, Dearie, J., and Wallack's motion for summary judgment dismissing this cause of action was granted on November 23, 1987. A final judgment dismissing the entire complaint was entered on December 1, 1987. Plaintiffs do not appeal from the dismissal of the seventh and ninth causes of action. See Br. of Appellants at 3 n. 1
 
 
 [2]
 The causes of action that arise out of the 1982 vote would still be barred under the six month statute, even if plaintiffs' tolling argument were accepted
 
 
 [3]
 In addition, there is no allegation that any other plaintiff who was employed by Wallack at the time of the 1983 vote challenged that vote. In fact, Legutko stated in an affidavit that "[n]o working Wallack employee was willing to sign my letter to the International in August 1983." See J.App. 196