669 F.2d 1222
 107 L.R.R.M. (BNA) 2547, 109 L.R.R.M. (BNA) 2779,
91 Lab.Cas. P 12,788, 93 Lab.Cas. P 13,325
 Robert A. "Red" KINNEY, Individually, and as a member on
behalf of Local Union 396 of the International
Brotherhood of Electrical Workers,
Plaintiff-Appellant,
v.
The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; Charles
H. Pillard; Individually, and as President of the IBEW; W.
L. Vinson, Individually, and as Vice-President of IBEW; Pat
Burns, Individually, and as a representative of the IBEW;
and John Lappin, Individually, and as a representative of
the IBEW, Defendants-Appellees.
 No. 78-2819.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 9, 1980.
Decided May 26, 1981.
As Amended Feb. 18, 1982.
Rehearing and Rehearing En Banc Denied March 10, 1982.
 
 R. Kelly Hocker, Tempe, Ariz., for plaintiff-appellant.
 Alan C. Davis, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before CHOY and TANG, Circuit Judges, and KASHIWA,* U.S. Court of Claims.
 TANG, Circuit Judge.
 
 
 1
 Kinney filed suit in district court asserting several claims arising from IBEW's allegedly improper removal of Kinney from his elected office with Local 396, and imposition of a trusteeship over the Local. The district court granted summary judgment against Kinney on one claim, and dismissed all other claims. Kinney seeks review of the grant of IBEW's motion for dismissal/summary judgment.
 
 
 2
 Kinney was the elected business manager and financial secretary of Local 396 of the IBEW. In December, 1976, Local 396 began contract negotiations with Nevada Power Company. Kinney headed the negotiating team.
 
 
 3
 On January 20, and again on January 26, 1977, Kinney requested a strike sanction from IBEW president Pillard. Ultimately, the requests were not acted on.
 
 
 4
 Continued negotiations were fruitless, and on January 31, the eve of the expiration of the existing contract, Kinney informed Nevada Power that Local 396 was on strike. On the morning of February 1, IBEW vice-president Vinson instructed Kinney to return the members to work. The next day a temporary contract extension was negotiated and Local 396 returned to work.
 
 
 5
 On February 3, Vinson informed Kinney that Kinney was suspended as financial secretary and business manager of Local 396. Kinney's removal became permanent on May 6. In addition Vinson suspended him from attending union meetings for one year, and from holding office for five years.
 
 
 6
 Kinney filed suit on June 6, seeking injunctive relief and damages. On June 27, IBEW president Pillard affirmed Kinney's removal from office, but vacated the other sanctions imposed against him.
 
 
 7
 On appeal Kinney claims that: (1) his procedural rights under 29 U.S.C. § 411(a)(5) were violated by his alleged summary removal from union office; (2) his rights of assembly and participation in the Local, protected by 29 U.S.C. §§ 411(a)(1), (2) and 529 were violated by the sanctions imposed on him; (3) the IBEW improperly imposed a trusteeship over the Local; (4) the IBEW violated its constitution by removing him from office in contravention of 29 U.S.C. § 185(a); and (5) his removal from office violated Nev.Rev.Stat. § 614.100.
 
 
 8
 * § 411(a)(5)
 
 
 9
 Kinney claims that the following events establish violations of his procedural rights under 29 U.S.C. § 411(a)(5).
 
 
 10
 On February 3, IBEW vice-president Vinson notified Kinney that Kinney was suspended from his position as business manager and financial secretary of the Local for failure to follow instructions. On February 22, Kinney was formally notified of the charges against him.
 
 
 11
 Vinson conducted a hearing to show cause on March 22 why Kinney should not be permanently removed from office. On May 6, Vinson decided that Kinney would: (1) be permanently removed from office; (2) be barred from holding any office for five years; and (3) be barred from attending meetings for one year.
 
 
 12
 On June 6, 1977, Kinney filed suit claiming that his rights under § 411(a)(5) were violated by Vinson's allegedly summary imposition of the three sanctions against him. In the meantime he appealed Vinson's decision to IBEW president Pillard. On June 27, Pillard affirmed Kinney's removal from office, but vacated the other two sanctions.
 
 
 13
 The district court dismissed Kinney's § 411(a)(5) claims, finding that Kinney failed to exhaust intraunion remedies with regard to all sanctions, and that, nonetheless, summary removal from office is not actionable under § 411(a)(5).
 
 
 14
 Section 411(a)(5) safeguards union members from improper disciplinary action:
 
 
 15
 No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined, except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 
 
 16
 Section 411(a)(4) provides, in pertinent part, that a member may be required to exhaust reasonable intraunion hearing procedures, which shall not exceed a four month lapse of time, before bringing suit.
 
 
 17
 Section 411(a)(4) is a grant of authority to the courts, not the unions, to require exhaustion of reasonable hearing procedures before an aggrieved person may pursue an action in district court .... As a matter of discretion, the district court may require exhaustion of intraunion remedies for up to four months ..., although it may excuse the four-month requirement where the intraunion remedies would be inadequate or pursuit of them would be futile ... (citations omitted).
 
 
 18
 Ornellas v. Oakley, 618 F.2d 1351, 1354 (9th Cir. 1980).
 
 
 19
 Because the three sanctions were not formally imposed on Kinney until May 6, and Kinney brought suit on June 6, the district court held that Kinney failed to exhaust intraunion remedies.
 
 
 20
 With regard to the sanctions disabling Kinney from attending meetings and from holding future office, we agree. Kinney has failed to establish that the district court abused its discretion in requiring intraunion exhaustion where, three weeks after suit was instituted, these two sanctions were vacated by resort to the IBEW president. Kinney can hardly claim that IBEW remedies were inadequate or that resort to them would be futile.[1]
 
 
 21
 We disagree with the district court regarding Kinney's failure to exhaust four months of intraunion remedies with regard to his removal from office. Although not permanently removed until May 6, Kinney was suspended from office, and therefore was effectively removed from office on February 3. Thus, when Kinney filed suit on June 6, he had exhausted the required four months.
 
 
 22
 We, nonetheless, affirm the dismissal of Kinney's § 411(a)(5) claim with regard to his removal from office. It is quite clear that § 411(a)(5) does not protect union officers from summary removal from office, no matter what the reason. Section 411(a)(5) simply does not cover suspension or removal from union office. Grand Lodge of International Ass'n of Machinists v. King, 335 F.2d 340, 342-43 (9th Cir.), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). Therefore, with regard to Kinney's § 411(a)(5) claims, we affirm.
 
 II
 
 23
 §§ 411(a)(1), (2) and 529
 
 
 24
 Kinney's complaint alleged that IBEW's removal of him from office, and its imposition of a trusteeship over the Local violated Kinney's rights under 29 U.S.C. §§ 411(a)(1), (2) and 529. The district court dismissed for failure to state a claim upon which relief could be granted, characterizing the allegations as "entirely conclusory".
 
 
 25
 Section 411(a)(1) provides that every union member "shall have equal rights ... to nominate candidates, to vote in elections and referendums ..., to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings ...." Section 411(a)(2) provides that every member "shall have the right to meet and assemble freely with other members and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates ... or upon any business ...." Section 529 provides that it shall be unlawful for any union or its representative "to fire, suspend, expel or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."
 
 
 26
 Unlike § 411(a)(5), the above sections protect union members from improper removal from office. King, 335 F.2d at 343-46. Kinney is, nonetheless, precluded from remedy under these sections.
 
 
 27
 Section 529 protects union members from discipline imposed as a reprisal for exercise of protected rights. Although removal from office is a "discipline" that may not be imposed as a reprisal, Kinney has not alleged that his removal from office was a reprisal for exercise of protected rights. Instead he claims that he was removed for alleged incompetence and failure to follow instructions. Kinney has therefore failed to state a claim under § 529.
 
 
 28
 Section 411(a)(1) and (2) arguably protect Kinney from the two now-vacated sanctions imposed on him by vice-president Vinson. His exclusion from meetings and preclusion from holding future offices are the types of disabilities prohibited by §§ 411(a)(1) and (2). Kinney is, however, precluded from relief under §§ 411(a)(1) and (2) because, like § 411(a)(5), those sections are subject to the exhaustion requirements imposed by the district court under § 411(a)(4). See, Stelling v. International Brotherhood of Electrical Workers, 587 F.2d 1379 (9th Cir. 1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). Because we cannot conclude that imposition of the exhaustion requirement was an abuse of discretion, we affirm with regard to these claims.
 
 III
 Trusteeship
 
 29
 Kinney alleges that the IBEW imposed a trusteeship over Local 396 without first holding a "fair hearing" as required by 29 U.S.C. § 464(c). Section 464(a) empowers "any member" affected by such a violation to bring suit for "such relief including injunctions as may be appropriate".
 
 
 30
 The district court granted IBEW's motion for summary judgment on the issue whether IBEW's actions constituted the imposition of a trusteeship. A "trusteeship" includes any "method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws". 29 U.S.C. § 402(h).
 
 
 31
 We conclude that summary judgment was improvidently granted. Summary judgment is proper only where there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A reviewing court must view the evidence and inferences in a light most favorable to the appellant. EEOC v. Alioto Fish Co., 623 F.2d 86, 88 (9th Cir. 1980). The district court recited facts that, when viewed most favorably to Kinney, appear more properly to suggest summary judgment in favor of Kinney: (1) after Kinney's suspension and removal from office as business manager, the Executive Board of Local 396 decided that Local president Arebalo, not IBEW representative Burns, should perform the duties of business manager, and that Kinney should be appointed to chair the committee negotiating with Nevada Power; (2) in response to these actions, "IBEW vice-president Vinson received authority and discretion from IBEW president Pillard to place Local 396 under a trusteeship"; (3) "vice-president Vinson in turn assigned IBEW representative Lappin the authority and discretion to take charge of the affairs of Local 396"; (4) on February 8, 1977, Lappin met with the Executive Board of Local 396 and stated that the Board's action in appointing Arebalo and Kinney "precipitated another action which means that as of this date we have taken control of this local and it's under International supervision ..."; and (5) on "February 11, 1977, IBEW representatives Burns and Coughlin sent out a newsletter to the general membership of Local 396" reiterating "that Kinney had been suspended, that IBEW vice-president Vinson was authorized to take supervision over Local 396; that IBEW representative Lappin had been assigned to conduct the overall affairs of the local; that IBEW representative Coughlin would be assisting the negotiating committee for Nevada Power; that IBEW representative Burns would handle the administrative duties of the local; that the officers, staff and office personnel of the local would continue to serve in their respective capacities, and that no agreement with Nevada Power will be signed unless approved by the membership." This recitation by the district court tacitly recognizes that, in addition, the IBEW overrode the Local's decision to have Arebalo serve as business manager instead of IBEW representative Burns. Counsels' oral arguments highlighted that there still remains factual disagreement regarding who normally has the power to appoint replacements for ousted officers.
 
 
 32
 The district court concluded, somewhat cryptically, that there was no question of fact remaining, rather "(w)hat we really have is the question of the meaning of the Lappin statement (that the IBEW had taken control of the Local) in the totality of the circumstances." Certainly the meaning of a statement in context is a question of fact.
 
 
 33
 We conclude that genuine issues of material fact precluding summary judgment are present. This case is remanded to the district court for further proceedings on this issue.
 
 
 34
 To facilitate those proceedings we offer some guidance. To constitute the imposition of a trusteeship, the requisite suspension of autonomy need not be complete: the fact that evidence indicates that vestiges of local autonomy remain is not alone dispositive. The court must also inquire into the indicia of suspended autonomy.
 
 
 35
 In Benda v. Grand Lodge of the International Ass'n of Machinists and Aerospace Workers, 584 F.2d 308 (9th Cir. 1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979), this court noted that the statutory definition of "trusteeship" is broad. The court treated the international's actions as the imposition of a trusteeship where all local officers had been suspended and an international representative had been appointed to "oversee" the affairs of the local. Id. at 312 n. 1. See also, Cross v. United Mine Workers, 353 F.Supp. 504 (S.D.Ill.1973) (although the district was characterized by the union as on "semi-autonomous" status, and the district officers and representatives retained collective bargaining and contract responsibilities, the court held that a trusteeship had been imposed on the district because dues-paying members within the district did not have the right to elect their officers); Hodgson v. United Mine Workers, 344 F.Supp. 990, 999 (D.D.C.1972), aff'd. 475 F.2d 1293 (D.C.Cir. 1973) (holding that a trusteeship was imposed where the Union was "taking away, withholding or deferring autonomous rights"). Suspension of autonomy, although partial, may, nonetheless, constitute the imposition of a trusteeship.
 
 
 36
 The district court should consider also, that the threatened imminent suspension of autonomy may amount to the imposition of a trusteeship in appropriate circumstances. Where the international sends "observers" or "investigators" with the authority to impose a trusteeship, the independence and opposition of the local's officers and representatives may be overcome to a degree constituting a trusteeship. See, Anderson, Landrum-Griffin and the Trusteeship Imbroglio, 71 Yale L.J. 1460, 1478 (1962).
 
 
 37
 If the court, on remand, finds that a trusteeship was imposed, it must then determine if the imposition was properly accomplished. See, Flight Engineers International Association v. Continental Airlines, 297 F.2d 397 (9th Cir. 1961), cert. denied, 369 U.S. 871, 82 S.Ct. 1141, 8 L.Ed.2d 276 (1962); 29 U.S.C. §§ 462 and 464.
 
 IV
 
 38
 § 185(a)
 
 
 39
 Kinney claimed that the IBEW violated its constitution by removing him from office, and that the district court had jurisdiction to remedy that violation pursuant to 29 U.S.C. § 185(a). Section 185(a) provides that "(s)uits for violation of contracts between an employer and a labor organization ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties ...."
 
 
 40
 The district court dismissed this cause of action, holding that § 185(a) does not grant jurisdiction to adjudicate intraunion disputes. We reverse.
 
 
 41
 The law in this circuit had been that an individual member or employee could sue his or her union for a breach of a union constitution under § 185(a). But § 185(a) did not provide jurisdiction over a suit for breach of a union constitution " 'if (the) controversy is related only to a union dispute which will not affect external labor relations,' " Studio Electrical Technicians Local 728 v. International Photographers of Motion Picture Industries, Local 659, 598 F.2d 551, 553 (9th Cir. 1979) (quoting Stelling, 587 F.2d at 1384). To establish that a union dispute would affect "external labor relations" a complainant had to allege significant impact. Studio Electrical Technicians, Local 728, 598 F.2d 553. Recent Supreme Court authority, however, requires a change in this approach to § 185(a) jurisdiction. In United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Local 334, --- U.S. ----, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), the Court held that a union constitution is a contract within the meaning of § 185(a) and that the "significant impact" test should not be applied to limit jurisdiction. The Court stated: "(n)othing in the language and legislative history of (§ 185(a)) suggests any special qualification or limitation on its reach, and we decline to interpose one ourselves." --- U.S. at ----, 101 S.Ct. at 2551. We therefore abandon the "significant impact" limitation on § 185(a) jurisdiction.
 
 
 42
 The Court expressly declined, however, to decide whether individual union members may bring suit on a union constitution against a labor organization. --- U.S. at ---- n.16, 101 S.Ct. at 2553 n.16. This circuit's position, however, is already clear on this issue. An individual union member may bring suit on a union constitution against a labor organization. See Stelling, 587 F.2d at 1382-83. Therefore, while we now abandon the "significant impact" limitation on § 185(a) jurisdiction, we adhere to this circuit's position that an individual may sue his or her union for a breach of a union constitution.
 
 
 43
 Appellee argues that Kinney fails to pinpoint a constitutional provision establishing a right in him, as an individual, to a particular job with the union, or to unlimited tenure in that job. Appellee contends that absent such a showing, Kinney does not possess standing to sue. We believe, however, that although Kinney's claim under § 185(a) may be inartfully pleaded, it is not so inadequate, under the liberalized rules of pleading, as to deprive him of standing. To establish standing, a plaintiff must allege such a personal stake in the outcome of a controversy as to assure concrete adverseness which sharpens the presentation of issues upon which a court depends for illumination of the issues. Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). Additionally, there must be some connection between the action challenged and some legally protected interest of the party challenging that action. Id.
 
 
 44
 Kinney's § 185(a) claim seeks relief for the alleged wrongful discharge of him from union office. Certainly he has a personal stake in the outcome of such a suit. Moreover, Kinney's allegation that the international breached the union constitution by discharging him establishes, at least for standing purposes, a connection between the action challenged (discharge) and a legally protected interest (his right to office under the union constitution). "To require a plaintiff to set out each and every contractual fact and contention in detail before federal jurisdiction would attach under (§ 185(a)) would be unreasonable and unwarranted in light of the purpose underlying (§ 185(a)) and the function of the complaint in federal pleading." Abrams v. Carrier Corp., 434 F.2d 1234 (2d Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (citing Chasis v. Progress Manufacturing Company, 382 F.2d 773, 777 (3d Cir. 1967)). Moreover, a complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." Jenkins, 395 U.S. at 422, 89 S.Ct. at 1849 (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).
 
 
 45
 Whether the international actually breached the union constitution is a question the district court should consider. This is not to say that on remand, appellees cannot succeed in a motion to dismiss for failure to state a claim on which relief can be granted. On this we intimate no opinion. But at least at this stage in the proceedings, Kinney's allegations are sufficient to give him standing to have his § 185(a) claim heard.
 
 
 46
 Finally, appellee argues that Kinney lacks standing to sue under § 185(a) due to his failure to exhaust available internal remedies. We disagree. As we pointed out earlier, although 29 U.S.C. § 411(a)(4) requires that a member exhaust reasonable intraunion hearing procedures before bringing suit, such exhaustion is not required if the procedures exceed a four month lapse of time. As noted above, Kinney was effectively removed from office on February 3. Thus, when he filed suit on June 6, over four months had already passed.
 
 
 47
 We therefore reverse the district court's dismissal of Kinney's § 185(a) claim for lack of jurisdiction and remand so that the district court can determine whether the IBEW violated its constitution by discharging Kinney from office.
 
 V
 State Claim
 
 48
 Kinney alleges that IBEW's actions in removing him from office, and refusing to allow him to represent the local, violate Nev.Rev.Stat. § 614.100, which provides that it is unlawful to deny the right of representation to an adversary at a hearing on wages, working conditions, or discipline. The district court dismissed because the operative facts failed to state a claim under Nev.Rev.Stat. § 614.100.
 
 
 49
 Generally, interpretations of state law by a district judge sitting in that state are accepted on review unless shown to be "clearly wrong", Clark v. Musick, 623 F.2d 89, 91 (9th Cir. 1980).
 
 
 50
 Kinney has failed to establish that the district court was clearly wrong in its interpretation of Nev.Rev.Stat. § 614.100. See, Vegas Franchises, Ltd. v. Culinary Workers Union, Local 226, 83 Nev. 422, 423, 433 P.2d 263 (1967) (declaring that the legislative purpose behind § 614.090 to § 614.110, inclusive, was to prevent coercion by a union that had already been rejected by the employees); Nev.Rev.Stat. § 614.110 (providing misdemeanor liability as the sole penalty for violation of § 614.100).
 
 
 51
 In summary, we affirm the judgment of the district court with regard to the procedural and substantive claims under 29 U.S.C. §§ 411(a)(1), (2), (5), 529, and Nev.Rev.Stat. 614.100 arising from Kinney's removal from office. Because we find that summary judgment was improvidently granted with regard to the trusteeship question and because we believe dismissal of Kinney's § 185(a) claim for lack of jurisdiction was improper, we reverse and remand for further proceedings consistent with this opinion.
 
 
 52
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 *
 Honorable Shiro Kashiwa, Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 We refuse to adopt IBEW's argument that this case is moot with regard to these two sanctions. Were this court to adopt such a disposition, we might, in effect, render § 411(a)(5) violations remediless by allowing central unions to flaunt § 411(a)(5) rights, only to retreat when threatened with suit, leaving the injured member to face a finding of mootness. We, of course, are not suggesting that IBEW so acted in Kinney's case. We merely adhere to the principle that violations of § 411(a)(5), once accomplished, are not rendered moot by subsequent vacation of the sanctions consequent to the violations when other injuries are alleged that vacation alone will not remedy. See, Kerr v. Screen Extras Guild, Inc., 466 F.2d 1267 (9th Cir. 1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973)