989 F.2d 1534
 143 L.R.R.M. (BNA) 2016, 143 L.R.R.M. (BNA) 2723,
125 Lab.Cas. P 10,682
 Lawrence MOORE, Plaintiff-Appellant,
v.
LOCAL UNION 569 OF THE INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS; International Brotherhood of Electrical
Workers; Paul Blackwood; Wayne Lovin; James Westfall;
Tom Pridemore; Baker Electric, Inc., Defendants-Appellees.
Lawrence MOORE, Plaintiff-Appellee,
v.
LOCAL UNION 569 OF THE INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS; Robert Flowers; Joseph
Heisler, Defendants-Appellants,
Baker Electric, Inc., Defendant-Appellee.
Lawrence MOORE, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; Defendant-Appellant,
Baker Electric, Inc., Defendant-Appellee.
Lawrence MOORE, Plaintiff-Appellant,
v.
LOCAL UNION 569 OF THE INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS; International Brotherhood of
Electrical Workers, Defendants-Appellees.
 Nos. 90-55557 thru 90-55559 and 91-55411.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1992.
Decided April 1, 1993.
As Amended June 28, 1993.
 
 Lewis N. Levy, Levy, Goldman & Levy, Los Angeles, CA, Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, Scott M. Bonesteel, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, San Diego, CA, for defendants-appellees/appellants.
 Lawrence Moore, pro per, San Diego, CA, for plaintiff-appellant/appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before ALDISERT,* CANBY, and THOMPSON, Circuit Judges.
 
 
 1
 ALDISERT, Senior Circuit Judge (sitting by designation):
 
 
 2
 A galaxy of labor law issues is presented in these appeals and cross appeals from the judgment of the district court--16 questions raised by appellant Moore alone. The district court granted summary judgment in favor of the International Brotherhood of Electrical Workers ("the International" or IBEW) on certain issues, a directed verdict in favor of the International on other issues, and a directed verdict in favor of the local union and certain individual defendants on still other issues. After a 32-day trial, a jury returned a verdict on the remaining issues in favor of Lawrence W. Moore against Local 569 of the International ("the Local") and certain of its officers.
 
 
 3
 Appearing pro se, Mr. Moore appeals the district court's adverse summary judgment and directed verdict against him on all of his claims against the International as well as the directed verdict on behalf of the Local and individual defendants.
 
 
 4
 The Local and its officers appeal the district court's denial of their motion for judgment NOV. The International appeals the district court's denial of its motion for sanctions against Moore.
 
 
 5
 Thus, we have four appeals: Moore's appeals at Nos. 90-55557 & 91-55411, the cross-appeal from the Local and individual defendants at 90-55558 and the appeal by the International at 90-55559.
 
 
 6
 Jurisdiction was proper in the district court under 18 U.S.C. § 3231. All of the orders from which the parties appeal and cross-appeal were final. Accordingly, we have appellate jurisdiction under 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(a)(1), Federal Rules of Appellate Procedure.
 
 
 7
 After careful consideration of all the issues presented on appeal, we affirm each aspect of the district court's judgment.
 
 I.
 
 8
 The standards of review are familiar. A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, the appellate court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 
 9
 A district court's grant of a directed verdict is also reviewed de novo. In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). In each instance, the reviewing court's role is the same as the district court's. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed sub nom. Casares v. Spendthrift Farm, --- U.S. ----, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). "[A] directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." Id.
 
 
 10
 A ruling on the appropriate statute of limitations is a question of law reviewed de novo, Felton v. Unisource Corp., 940 F.2d 503, 508 (9th Cir.1991), and the interpretation of a statute is a question of law reviewed de novo, see Batchelor v. Oak Hill Medical Group, 870 F.2d 1446, 1447 (9th Cir.1989).
 
 
 11
 Finally, we review a district court's denial of Rule 11 sanctions for an abuse of discretion. Giebelhaus v. Spindrift Yachts, 938 F.2d 962, 964 (9th Cir.1991). Under the abuse of discretion standard, a reviewing court cannot reverse "unless it has a definite and firm conviction that the court below committed a clear error of judgment." United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992).
 
 II.
 
 12
 Moore is no stranger to this court. See Moore v. Bechtel Power Corp., 840 F.2d 634 (9th Cir.1988) (on remand from the Supreme Court); Moore v. Int'l Bhd. of Elec. Workers, Local No. 569, No. 87-6066, 1988 WL 35760 (9th Cir. April 13, 1988) (unpublished memorandum disposition). Moore has filed at least five lawsuits against his local union and the International. The incidents forming the basis of the present appeals, all arising from the last case filed by Moore, can be grouped into three general scenarios.
 
 
 13
 First, Moore led an attempt to overturn a working dues increase that had been passed by the membership and approved by the International president. He was successful in this endeavor on the local level, but the International president refused to approve the decrease. According to evidence produced by Moore, during the debate on dues, certain Local officers harassed and intimidated him for speaking out against them and also committed assault and battery upon him.
 
 
 14
 Second, Moore contended that Local officials referred electricians to job sites in an unfair manner. He complained about certain jobs he did not get and about a more general practice that favored the officers and their friends by giving them extra work.
 
 
 15
 Finally, Moore complained that Baker Electric Inc., an employer, rejected him without good cause after a referral from the Local, violating the collective bargaining agreement. In addition, there are disputes regarding costs, attorneys fees and sanctions.
 
 A.
 
 16
 On July 25, 1985, Moore and another member of the Local, Walter F. Whelan, Jr., brought an action against the International, Local 569, Baker Electric and various individual defendants who are past and present officers of the Local and the International.[1] The complaint alleged that the defendants breached certain bylaws of Local 569, the IBEW constitution, the duty of fair representation under the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), and various provisions of the Labor Management Reporting & Disclosure Act (LMRDA), 29 U.S.C. §§ 401-531, and committed the common law torts of assault and battery.
 
 
 17
 Much of the litigation stems from the attempt to reduce dues. On April 11, 1984, there was a general membership meeting of the Local to change the bylaws so that all members would pay $6.00 in basic monthly dues and an increase of one-half percent in working dues. On May 9, 1984, a majority of the members voted to adopt the proposed amendment. Shortly thereafter, it was approved by the International president.
 
 
 18
 Six months later, Moore made a motion to reduce the Local's working dues by one-half percent. In a special meeting on December 26, 1984, the Local carried the proposal. The business manager submitted the proposed bylaw amendment to the International president, who refused to approve it. The president's refusal gives rise to one of Moore's claims against the International.
 
 
 19
 In May 1984 and again in June 1985, Moore filed internal union charges against officers and members of the Local who he alleged had been conducting a personal vendetta against him, including business manager Blackwood, Local president Heisler, recording secretary Hartnett, sergeant-at-arms Flowers and members of the executive board. Moore alleged that certain members deprived him of his right to participate in union activities by, among other things, refusing to recognize him on the floor at meetings, interrupting his comments at meetings and using violence and threats of violence. Moore claims that the International ratified these activities and, thereby, further deprived him of his right to participate.
 
 
 20
 The International had representative Robbins investigate both sets of charges. On September 12, 1984, after Robbins' investigation, Moore was notified that his initial charges were without merit and had been dismissed. After the June 1985 charges were filed, Robbins reported that he held a meeting of all the officers and members named by Moore and asked Moore's friend and supporter, Whelan, to participate. Robbins concluded that Moore's charges lacked merit and that Moore was merely exhausting his internal union remedies so that he could sue the Local. In August of 1985, an officer of the International advised Moore that no further action regarding his June 1985 charges would be taken until the current litigation had been concluded.
 
 
 21
 Moore's remaining claim against the Local involves its hiring hall procedures under various collective bargaining agreements. As a local labor organization, Local 569 is signatory to several collective bargaining agreements. One such agreement, the Inside Agreement, is negotiated between the Local and the San Diego Chapter of the National Electrical Contractor's Association (NECA) and concerns the wages, conditions, and other matters for Local members who perform construction site work. Another agreement, the Sound Agreement, governs the wages, conditions and other matters for Local members who perform work for NECA and who specialize in the installation of sound transmitting equipment. Moore challenges the Local's administration of the referral procedures under the Sound Agreement.
 
 
 22
 According to the Local, both agreements have employment referral clauses within them. An out-of-work member of the Local may qualify for placement into either or both of these agreements' referral systems merely by marking the appropriate place on a sign-in book maintained at the Local's offices. Appellant Moore did not follow the prescribed procedures and therefore was not considered by the Local to be a member of the Sound Agreement bargaining unit. Thus, he could not benefit from the hiring hall procedures that the agreement provided.
 
 
 23
 Finally, Moore claims that Baker Electric violated the Inside Agreement by rejecting his employment application without good cause. Prior to filing this action, the appeals committee of Local 569 interpreted the Inside Agreement as giving an employer the absolute right to reject referrals from the union. This decision was not appealed and has become final. The district court, therefore, granted summary judgment on behalf of Baker Electric on res judicata grounds. Moore also claims that the Local breached its duty of fair representation towards him by construing the right-to-reject clause as absolute. The district court dismissed this claim.
 
 B.
 
 24
 The present suit was filed on July 25, 1985. Prior to trial, the International moved for summary judgment on the working dues issue. The court granted the motion for summary judgment and denied a motion for reconsideration.
 
 
 25
 The presentation of Moore's case consumed most of the 32-day trial. At the close of Moore's case on December 7, 1989, the International moved for a directed verdict on Moore's remaining claims. The district court granted the International's motion for a directed verdict as to each of the claims against it, and each count was dismissed. The judgment provided that the International recover its costs for the action. The International then filed a motion for sanctions under Rule 11. This was denied. The International has appealed that decision.
 
 
 26
 The court also directed a verdict in favor of the Local and certain Local officers on Moore's claim that they breached the duty of fair representation and discriminated against him in violation of Title I of the LMRDA.
 
 
 27
 The remaining claims against the Local and individual members Heisler and Flowers went to the jury for consideration. The jury found in Moore's favor and awarded him damages on his remaining LMRDA claims, his assault and battery claims and his claim that the Local breached the union's bylaws and the International constitution by improperly administering the Sound agreement referral system. The jury awarded Moore a total of $66,156.31 in compensatory and punitive damages.
 
 
 28
 We first turn to Moore's appeals.
 
 III.
 
 29
 We will discuss Moore's contentions that the court erred in granting a directed verdict in favor of the International (a) in ruling that the International president, by exercising his authority to withhold approval of a proposed bylaw to decrease dues, did not violate section 101(a)(3) of the LMRDA, 29 U.S.C. § 411(a)(3); (b) in applying the six month limitations period announced in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to Moore's section 301 contract claim against the International based on his May 1984 internal union charges; (c) in holding that Moore failed to prove damages in his section 301 contract claim based on his June 1985 internal union charges and in refusing to permit punitive damages to be awarded; (d) in determining that because Moore failed to prove bad faith or fraud on the part of the International, the International could not be held responsible when members of the Local violated his rights under Title I of the LMRDA, 29 U.S.C. § 411(a)(2); and (e) in determining that the International could not be held liable vicariously under an agency theory for the Local's violation of these rights.
 
 A.
 
 30
 Moore contends that the International's constitution offends section 101(a)(3) of the LMRDA, 29 U.S.C. § 411(a)(3), by authorizing the International president to refuse to approve a proposed amendment that would reduce Local members' monthly dues. Article XVII, Section 6 of the International constitution provides:
 
 
 31
 No [local union] shall put into effect any bylaw, amendment, rule or agreement of any kind without first securing such approval [by the International president]. All these shall be null and void without [International president] approval. The [International president] has the right to correct any bylaws, amendments, rules or agreements to conform with this Constitution and the policies of the I.B.E.W.
 
 
 32
 Clearly, the president's veto was authorized by the International's constitution. Therefore we must determine whether its application in this instance violates the LMRDA. The interpretation of a statute is a question of law reviewed de novo. See Batchelor v. Oak Hill Medical Group, 870 F.2d 1446, 1447 (9th Cir.1989).
 
 
 33
 On its face, section 101(a)(3) of the LMRDA applies only to increases in dues, not decreases. The provision states:
 
 
 34
 Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except--
 
 
 35
 (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members....
 
 
 36
 29 U.S.C. § 411(a)(3). The plain language of section 101(a)(3) indicates clearly that it is concerned only with an increase in dues. We have examined the legislative history and are unable to discover any reason to conclude that Congress did not intend the unambiguous language of the statute to apply.
 
 
 37
 Moore primarily relies on Burroughs v. Operating Engineers Local Union No. 3, 686 F.2d 723 (9th Cir.1982), for his argument that section 101(a)(3) was designed to vest complete control over union dues in union members, not union management. Burroughs dealt with a union bylaw that provided for an automatic dues increase subject to a temporary suspension, in whole or in part, by the executive board. This court held that where a bylaw delegates control over increases in rates of dues essentially to the union officers and not the members, it violates section 101(a)(3). Id. at 730 (emphasis added). This court concluded that "the district judge was correct to the extent he held that if the 'rate of dues' has not increased, there can be no violation of section 101(a)(3)." Id. at 727.
 
 
 38
 Militating against Moore also is DiMiceli v. National Marine Engineers Beneficial Ass'n, 500 F.2d 31, 33 (9th Cir.1974) (per curiam) ("In some of these cases the court also had to decide whether there had been an increase in 'the rates of dues and initiation fees,' because, if there were not, § 411(a)(3) would not apply."). Accordingly, we conclude that the district court correctly found that section 101(a)(3) applies only to dues increases. Neither party contends that there was an increase in dues as a result of the president's veto.
 
 B.
 
 39
 Moore's second and third contentions relate to the court's treatment of his claims brought under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Relying on Wooddell v. International Brotherhood of Electrical Workers, Local 71, --- U.S. ----, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), Moore asserts that, because the defendants violated the union's constitution, they are liable to Moore for breach of contract. The contract theory announced in Wooddell conformed to this court's practice first articulated in Kinney v. International Brotherhood of Electrical Workers, 669 F.2d 1222 (9th Cir.1981). It is important to recognize that this species of liability, although brought under section 301, has a different jurisprudential basis than the more familiar action based on the "statutory duty of fair representation." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). The duty of fair representation is inferred from unions' exclusive authority under the NLRA, 29 U.S.C. § 159(a), to represent all employees in a bargaining unit. Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 563, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); Vaca, 386 U.S. at 177, 87 S.Ct. at 910. Whereas the duty of fair representation requires a union to act fairly when dealing with an employer on behalf of a member, a Wooddell claim requires a union to obey its own constitution regardless of the context.
 
 
 40
 Moore made two separate Wooddell claims against the International, arising from the two separate complaints Moore filed with the International against Local 569 officials.
 
 1.
 
 41
 The first claim arose from Moore's allegation that officials of the Local assaulted and harassed him at an April 1984 meeting. Robbins, the International official who investigated Moore's allegations, found the complaint to be without merit. In essence, Moore alleges that the IBEW breached the duty imposed by its own constitution to investigate charges properly. Although the International denied his claim on September 12, 1984, Moore did not file his complaint in the within action until July 25, 1985. Relying on the authority of DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), the district court applied the six month limitation period of section 10(b) of the NLRA, 29 U.S.C. § 160(b), to this claim and held that it was time-barred. Moore contends that the district court erred by not applying the state statute of limitations governing breaches of contract. A ruling on the appropriate statute of limitations is a question of law reviewed de novo. Felton v. Unisource Corp., 940 F.2d 503, 508 (9th Cir.1991).
 
 
 42
 In DelCostello, the Supreme Court held that the appropriate limitations period for "hybrid"[2] section 301 suits in which an employee sues the union for breach of the duty of fair representation is the six month period in section 10(b) of the NLRA. 462 U.S. at 172, 103 S.Ct. at 2294. Although DelCostello did not involve a "pure" section 301 breach of contract action, as is presented here, the Court did observe in a footnote that "even if this action were considered as arising solely under § 301 ... the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the [Six Month Statute of Limitations]." Id. at 159 n. 12, 103 S.Ct. at 2287 n. 12.
 
 
 43
 Moreover, this court's case law supports the district court's approach. See, e.g., Kalombo v. Hughes Mkt., Inc., 886 F.2d 258, 259 (9th Cir.1989) (plaintiff's claim of breach of the duty of fair representation against local union was subject to six month statute of limitations); Gardner v. Int'l Tel. Employees Local No. 9, 850 F.2d 518, 522 (9th Cir.1989) (plaintiff's claim that union violated LMRDA by failing to give him copy of collective bargaining agreement is subject to six month statute of limitations); Conley v. Int'l Bhd. of Elec. Workers, Local 639, 810 F.2d 913, 915 (9th Cir.1987) (plaintiff's complaint alleging a violation of section 301 of LMRA and of state contract law was subject to six month statute of limitations).
 
 
 44
 In Conley, this court made the following observation:
 
 
 45
 The essence of Conley's complaint is that the union failed to act fairly on his behalf. Although he does not claim that the union failed to act fairly in representing him before the employer, we do not think that this factor is sufficient to merit application of a state statute of limitations. The case at hand poses the question of a union's duty to its members, and because of the close relation this bears to the federal policy of fair representation generally, it follows that the federal limitations statute applies.
 
 
 46
 810 F.2d at 915. The reasoning of this court in Conley is equally applicable to the instant case. Accordingly, we hold that the district court did not err in applying the six month limitations period.
 
 2.
 
 47
 Moore also argues that the International breached various provisions of its constitution when it failed to investigate his June 1985 grievance in which he alleged that Bob Flowers, sergeant-at-arms of Local 569, brandished a firearm at a meeting in an effort to keep him from exercising his LMRDA rights. The International indefinitely stayed action on Moore's grievance after he filed this lawsuit in July 1985.
 
 
 48
 At trial, the court asked Moore, "Now, what are your damages?" RT, XXXI at 153. After inquiring what possible damages might be available, he responded: "None that I'm not going to recover from the Local." Id. at 154. Generally, the remedy for breach of a collective bargaining agreement is limited to an award of compensatory damages. Desert Palace, Inc. v. Local Joint Exec. Bd. of Las Vegas, 679 F.2d 789, 794 (9th Cir.1982).
 
 
 49
 Moore contends nevertheless that the jury should have been permitted to consider punitive damages. The general rule, however, is that punitive damages are not allowed in actions for breach of contract brought under section 301. Williams v. Pacific Maritime Ass'n, 421 F.2d 1287, 1289 (9th Cir.1970) (punitive damages may not be awarded for claims brought under section 301). The leading case is Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co., 298 F.2d 277 (3d Cir.1962) (in banc). In a concurring opinion, Chief Judge Biggs recites the prevailing view: "It is the general policy of the federal labor laws, to which the federal courts are to look for guidance in Section 301 actions, to supply remedies rather than punishments." Id. at 284. The Supreme Court endorsed this concept in International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42, 52, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979) (interpreting Railway Labor Act, 45 U.S.C. §§ 151-188).
 
 
 50
 Under these circumstances, the court properly granted a directed verdict in favor of the International.
 
 C.
 
 51
 Moore argues also that the International's dismissal of his May 1984 and June 1985 internal union charges violated his right of free speech under Title I of the LMRDA, 29 U.S.C. § 411(a)(2). The district court determined that the International could not be held liable for dismissing the union charges, absent a showing of bad faith or fraud. The district court ruled that Moore had "barely presented a scintilla suggestion of the possibility" that there might be some evidence of wrongful intent, and that not even the testimony of International Vice President McCann, Moore's sole witness on this issue, shows bad intent. RT, XXXI at 146. A district court's grant of a directed verdict is reviewed de novo. In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). A directed verdict is proper when the " 'evidence permits only one reasonable conclusion as to the verdict.' " Id. (quoting Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986)).
 
 
 52
 In Rodonich v. House Wreckers Union Local 95 of Laborers' International Union, 817 F.2d 967, 973 (2d Cir.1987), the court held that the plaintiff union members were required to prove by clear and convincing evidence that the local union had engaged in a purposeful and deliberate attempt to suppress dissent within the union. The International would incur liability on a theory of ratification only if it affirmed the Local's actions "with full knowledge that it was part of an overall scheme to suppress dissent in violation of the LMRDA." Id. The district court applied the teachings of Rodonich and determined that Moore had failed to show that the International had ratified the Local's conduct with full knowledge of its unlawful character.
 
 
 53
 In response, Moore contends that the district court invaded the jury's province by evaluating testimony and "clearly biased" reports by International representatives. In his brief, Moore states that Mr. Whelan testified that Flowers had made threats against Moore's life in the presence of himself and Robbins, the International representative, but that this evidence was suppressed by the court. Moore also asserts that the jury could have found that the International's "bad faith refusal" to intervene implied ratification of the Local's entire pattern of conduct against him. He claims that the truth of this is evidenced by the continued violations of Moore's rights after the International's refusal to intervene.
 
 
 54
 At bottom, Moore cites no record evidence to support his position. The court did not err in granting a directed verdict.
 
 D.
 
 55
 Moore argued at trial and urges on appeal that the International is liable under an agency theory for the derelictions of the Local. He asserts that the existence of an agency relationship may be proved by deductions and inferences from the conduct of the parties and contends that the trial court erred by not letting the jury determine whether or not an agency relationship existed between the International and the Local.
 
 
 56
 Relying on Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 218, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979), the International correctly argues that without evidence that it instigated, supported, ratified or encouraged the Local's activities or that the Local acted pursuant to its agreement with the International, there was no agency relationship as a matter of law. Moreover, constructive knowledge of the Local's possibly illegal activity does not impose on the International a legal duty to intervene. The Court of Appeals for the Eleventh Circuit has previously refused to hold an international union liable for retaliatory discipline imposed by the local union, even though an international union official was present at the local union meeting when the unlawful discipline was meted out. Chapa v. Local 18, 737 F.2d 929, 932 (11th Cir.1984).
 
 
 57
 We have carefully considered all of Moore's contentions against the International and conclude that the district court did not err in granting summary judgment and a directed verdict in favor of the International.
 
 IV.
 
 58
 The district court also directed a verdict in favor of the Local on certain of Moore's claims. We conclude that his contentions on appeal are without merit, being of the view that the district court properly dismissed Moore's claims that Baker violated the Inside Agreement and that, by not pursuing Moore's grievance against Baker, the Local breached its duty of fair representation; that the court properly concluded that no breach of fiduciary duty occurred with respect to the dues issue; that the court did not err in concluding that Moore was required to exhaust applicable contract remedies before obtaining judicial relief; that the court properly dismissed Moore's claims against various Local officers because they are immune from suit; that the court properly directed verdicts in favor of individual Local officers because Moore had produced no evidence to support his contention that they had interfered with his right to participate at union meetings; and that the court did not fail to decide any of Moore's claims under LMRDA or any of his breach of contract claims.
 
 
 59
 In sum, we have deliberated on and evaluated all of Moore's many contentions presented in his appeal. To the extent not discussed herein, Moore's other arguments have been considered and rejected.
 
 V.
 
 60
 The court allowed the following four claims to go to the jury: breach of the Local's bylaws and the International constitution against Local 569; violation of LMRDA Title I rights against Local 569, Heisler and Flowers; assault against Local 569, Heisler and Flowers; and battery against Local 569, Heisler and Flowers. The jury returned a verdict in favor of plaintiff on all four claims. The Local and individual defendants appeal from these verdicts. They contend that the court erred in an important jury instruction and further erred in denying their motions for judgment NOV.
 
 A.
 
 61
 The Local contends that the district court erred by failing to instruct the jury that Moore must have been a member of the Sound Agreement bargaining unit in order to recover from the union for the breach of the duty of fair representation. Our inquiry is " 'whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading.' " Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992) (quoting Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988)). In order to evaluate this contention we must set forth in detail the factual predicate for this aspect of this complicated litigation; it then becomes necessary to analyze whether the district court presented this particular claim to the jury as a section 301 claim for breach of the statutory duty of fair representation or a section 301 claim for breach of provisions of the constitution as set forth in Wooddell v. International Brotherhood of Electrical Workers, Local 71, --- U.S. ----, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), and in our earlier decision in Kinney v. International Brotherhood of Electrical Workers, 669 F.2d 1222 (9th Cir.1981). We have previously explained this dichotomy in Part III, B.
 
 1.
 
 62
 The evidence showed that the vast majority of Local 569 electricians were members of the Inside Agreement between the Local and the San Diego Chapter of NECA. The hiring hall allowed out-of-work electricians to sign a book indicating their availability and then assigned them to job sites in the order they signed. Each electrician belonged to a "Group," defined by seniority and place of residence. Different groups had different priorities for job assignments.
 
 
 63
 Local 569 had several other agreements with San Diego NECA for more specialized electrical installation. One of these was the Sound Agreement which covered the installation of stereo equipment and the like. The Sound Agreement hiring hall worked exactly like the Inside Agreement hiring hall. Local 569 members had to fill out a simple check-the-box form to join the Sound Agreement.
 
 
 64
 The evidence showed that electricians who participated in the Sound Agreement hiring hall could be dispatched to job assignments without losing their place in line, so to speak, for Inside wiring jobs. The evidence further showed that this practice was not known to the majority of members of Local 569, but was well known to union officers and certain relatives and friends of union officers. Moore contended that both the operation of the Sound Agreement hiring hall and the fact that its operation was hidden from the membership breached the union's duty under the International constitution and union bylaws.
 
 2.
 
 65
 It bears repetition that the duty of fair representation is based on the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), which creates a union's exclusive authority to represent all employees in a bargaining unit. Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 563, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). Its origins are strictly statutory:Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.
 
 
 66
 Vaca v. Sipes, 386 U.S. at 177, 87 S.Ct. at 910. In Karo v. San Diego Symphony Orchestra Ass'n, 762 F.2d 819, 821 (9th Cir.1985), this court held that a plaintiff must either be a member of a collective bargaining unit or a third party beneficiary to that contract in order to have standing to bring a suit for breach of the duty of fair representation against a union. This standing requirement attaches only to the statutory duty of fair representation that arises under the NLRA.
 
 
 67
 In Wooddell, --- U.S. at ----, 112 S.Ct. at 501, the United States Supreme Court held that a union member may bring a section 301 breach of contract claim based on a local union's violation of its constitution. As stated earlier, this contract theory is in accord with this court's practice as initially set forth in Kinney, 669 F.2d at 1229 ("The law in this circuit had been that an individual member or employee could sue his or her union for breach of a union constitution under § 185(a)."). Under this theory, the individual has standing if he or she is a member or employee of the union whose actions are challenged, but the individual need not be a member of a particular bargaining unit.[3]
 
 3.
 
 68
 The district court gave the following jury instruction:
 
 
 69
 Pursuant to the Union by-Laws, and the IBEW constitution, the Defendant Local 569, at all times material was and is under a duty to treat all members equally and to reasonably advise all members of Union of programs, policies, practices, opportunities and obligations. This is the duty of fair representation.
 
 
 70
 RT, XXXIII at 241 (emphasis added). The duty described by the district court has its basis in the union constitution and bylaws and not in the NLRA, and, thus, it is not the statutory duty of fair representation. The breach of a duty delineated in a union constitution is a breach of contract cognizable under section 301, 29 U.S.C. § 185(a). Wooddell, --- U.S. at ----, 112 S.Ct. at 501. Clearly the issue went to the jury on the basis of the defendants' duty "[p]ursuant to the Union Bylaws, and the IBEW Constitution," and not on the basis of the statutory duty of fair representation, although concededly, in lay language not comporting with labor law terms of art, the trial court characterized the duty under the union constitution as the "duty of fair representation."
 
 
 71
 Although the Local challenges the court's jury instruction on the basis of the standing requirement relevant to the statutory duty, it was well aware that the duty described by the district court had its basis in the International's constitution and bylaws and not in the statute. In its "Motion for Judgment Notwithstanding the Verdict," the Union argued that the district court committed an error of law by instructing the jury that a union's constitution and bylaws create the duty of fair representation. On appeal, the Local attacks the validity of the district court's instruction on the basis that it does not properly describe the statutory duty of fair representation. This, of course, misses the relevant point--that the case went to the jury on a Wooddell claim and not on a breach of the statutory duty of fair representation. Notwithstanding the district court's description of the claim in lay language, the court presented to the jury a section 301 breach of contract claim as recognized by the Supreme Court. The court presented a Wooddell claim to the jury, not a claim for the breach of the statutory duty of fair representation.
 
 
 72
 Accordingly, under these circumstances it was not necessary for Moore to be a member of any particular bargaining unit to assert a Wooddell claim. To bring such a section 301 claim, one need only be a member of the organization governed by the union constitution which is the basis of the claim. Wooddell, --- U.S. at ---- n. 4, 112 S.Ct. at 498 n. 4. Under the theory by which this issue was submitted to the jury, the court did not err by refusing to instruct the jury that Moore had to be a member of the Sound Agreement bargaining unit.
 
 B.
 
 73
 We conclude that the court did not err in refusing to grant the motion for judgment NOV on Moore's freedom of speech and assembly claim arising under Title I of the LMRDA. The jury found that Moore had established, by clear and convincing evidence, that Local 569, Heisler and Flowers intimidated Moore in an effort to chill his exercise of his LMRDA rights and to retaliate for his exercise of those rights. The Local and individual members contend that the evidence fell short of the clear and convincing standard and that the court should have granted their motion for judgment NOV. The standard of review for denial of judgment NOV is the same as the standard for reviewing a jury verdict: Both the verdict and the denial of the motion must be affirmed if there is substantial evidence to support the verdict. Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1370-71 (9th Cir.1987). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion...." Id. at 1371. Finally, neither the trial court nor this court may weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. Id.
 
 
 74
 On appeal, the Local and individual defendants are asking us to assess the credibility of witnesses. They contend that Moore was the only person to testify to support his claims and "[a]rrayed against [Moore]'s uncorroborated testimony was that of at least seven other witnesses." This may be so, but it is for the jury and not a reviewing court to determine matters of credibility.
 
 C.
 
 75
 We conclude also that the district court properly permitted the jury to consider Moore's assault and battery claim. Moore testified that he was assaulted and battered. This was sufficient evidence to send the claim to the jury, and we will not disturb the ruling.
 
 
 76
 To the extent not discussed herein, other arguments of the Local and individual defendants have been considered and rejected.
 
 VI.
 
 77
 Finally, we turn to the appeal of the International, which contends that Moore violated Rule 11, Federal Rules of Civil Procedure, and that the district court erred in not imposing sanctions against him. We review a district court's denial of Rule 11 sanctions for an abuse of discretion. Giebelhaus v. Spindrift Yachts, 938 F.2d 962, 964 (9th Cir.1991). Under the abuse of discretion standard, a reviewing court will not reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992). The International does not set forth compelling factors to create a strong conviction that the district court erred in refusing to impose sanctions.
 
 VII.
 
 78
 We have considered all the contentions presented by the three sets of appellants in these proceedings. The judgment of the district court is AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Whelan subsequently settled and is no longer in the litigation
 
 
 [2]
 A "hybrid" suit is potentially two suits--a suit against the employer for breach of the collective bargaining agreement under section 301 and a suit against the union for breach of the duty of fair representation under the NLRA. These two claims are inextricably interdependent; the plaintiff must prove the same elements whether he or she chooses to sue one or both of the potential defendants. DelCostello, 462 U.S. at 164-65, 103 S.Ct. at 2290-91. A straightforward section 301 breach of contract claim is merely a suit for breach of a labor contract, whether that contract be a collective bargaining agreement or a union constitution. See Wooddell v. Int'l Bhd. of Elec. Workers, --- U.S. ----, ----, 112 S.Ct. 494, 501, 116 L.Ed.2d 419 (1991)
 
 
 [3]
 Counsel for Local 569 admitted at oral argument that an individual bringing a suit under section 301 for breach of the union's constitution would not have to be a member of a particular bargaining unit